JOHN R. READ (DC Bar #419373)
john.read@usdoj.gov
MEAGAN BELLSHAW (CA Bar #257875)
meagan.bellshaw@usdoj.gov
CORY BRADER LEUCHTEN (NY Bar # 5118732)
cory.leuchten@usdoj.gov
SARAH H. LICHT (DC Bar #1021541)
sarah.licht@usdoj.gov
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 598-2307
Facsimile: (202) 514-7308

Attorneys for Plaintiff United States of America

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff* <br> v. <br><br> VISA INC. and PLAID INC., <br><br> *Defendants*. | Case No.: 4:20-cv-07810-JSW <br><br> **DECLARATION OF MEAGAN K. BELLSHAW IN SUPPORT OF PLAINTIFF UNITED STATES' STATEMENT IN SUPPORT OF ADMINISTRATIVE RELIEF FOR AN EXPEDITED CASE MANAGEMENT CONFERENCE** <br><br> Judge: Hon. Jeffrey S. White |

1  I, Meagan K. Bellshaw, hereby declare as follows:

2  A. I am a member of the bar of the state of California and an attorney employed by the Department of Justice, Antitrust Division, counsel to Plaintiff United States. I make this declaration in support of the United States' Statement in Support of Administrative Relief for an Expedited Case Management Conference. I make this declaration of personal, firsthand knowledge and could and would testify competently thereto.

B. On November 10, 2020, counsel for the United States met and conferred telephonically with counsel for Defendants Visa Inc. ("Visa") and Plaid Inc. ("Plaid"). During the call, counsel for Plaid proposed a trial start date of late February or early March, 2021.

C. Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Timing Agreement, dated May 15, 2020, executed by counsel for each the United States, Visa, and Plaid, in connection with the Antitrust Division's pre-complaint investigation of Visa's proposed acquisition of Plaid. The cited portion of the document has been highlighted and is located in Section IV(C) on page 8.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on the 20th day of November, 2020, in Washington, D.C.

*/s/ Meagan K. Bellshaw*
Meagan K. Bellshaw
Trial Attorney
Department of Justice
Antitrust Division

# EXHIBIT A



**U.S. Department of Justice**

Antitrust Division

---

*Mark R. Meador, Esq.*
*450 5th St., NW, Suite 8000*
*Washington, DC 20530*
*mark.meador@usdoj.gov*

May 15, 2020

Steven C. Sunshine, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
steve.sunshine@skadden.com

Ben Labow, Esq.
Wilson Sonsini Goodrich & Rosati
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
blabow@wsgr.com

      Re:    <u>Proposed Acquisition of Plaid Inc. by Visa Inc., DOJ File No. 60-522190-0006</u>

Dear Messrs. Sunshine and Labow:

      This letter sets forth the understandings between the U.S. Department of Justice Antitrust Division ("Division"), Visa Inc. ("Visa"), and Plaid Inc. ("Plaid") (Visa and Plaid are hereinafter referred to separately as "Party" and collectively as the "Parties), in connection with the proposed acquisition of Plaid by Visa ("Proposed Acquisition"), which is the subject of the Requests for Additional Information and Documents issued to the Parties on March 27, 2020 ("Second Requests"). This letter contains the entire agreement of the Division and the Parties with respect to the subject matter of this letter, and supersedes any prior agreements, understandings, or negotiations, whether written or oral. This letter may only be amended in writing by agreement of the Division and the Parties. The Division and the Parties further agree as follows:

    I.    <u>Timing</u>

      Each Party will certify compliance with its Second Request no earlier than June 30, 2020. The date of the last received certification of compliance will be the "Compliance Date." The Parties will not consummate the Proposed Acquisition before 12:01 a.m. Eastern Time ninety (90) days following the Compliance Date (the "Closing Date"), unless they have received from

the Division prior written notice that the Division has closed its investigation. It may become appropriate to revisit this agreement, and to amend, shorten, extend, or cancel it, in light of developments in the unfolding COVID-19 situation. The Parties and the Division agree to engage with one another in good faith to that end. The Parties agree to provide the Division with ten (10) days written notice before closing the Proposed Acquisition, unless they have the Division's written concurrence to close within a shorter period.

Rule 6(a) of the Federal Rules of Civil Procedure will apply to computing any period of time specified in this letter. The Closing Date, however, may occur on a Saturday, Sunday, or legal holiday. Any material received by the Division after 5:00 p.m. Eastern Time will be deemed received on the next business day.

II.   Second Request Compliance

   A.   Limited Document Custodians

In order to comply with the Second Requests, each Party must, inter alia, produce to the Division all documents that are responsive to its Second Request and that are in that Party's possession, custody, or control. It is agreed, however, that Visa may limit its search to 25 individuals for documents and electronically stored information that may be responsive to the Second Requests, and Plaid may limit its search to 16 individuals. Those individuals are identified in Attachment A ("Custodian List").

In addition to the individuals on the Custodian List, each Party must also search (1) the files of any predecessors or successors of the individuals identified on the Custodian List to the extent that such files may include documents or electronically stored information that fall within the relevant date range specified in the Second Requests; (2) the files of secretaries and other administrative personnel who support any of the individuals identified on the Custodian List; and (3) any centralized hard-copy or electronic files, databases, data sets, or other shared repositories of potentially responsive information.

In addition, the Division reserves the right to add up to a total of five (5) custodians ("Additional Custodians") to the Custodian List of each Party at any time prior to the filing of a complaint. The Parties agree that they will submit responsive documents found in the files of any Additional Custodians within twenty (20) days of receipt from the Division of the names of the Additional Custodians. The addition of custodians will not delay a Party's certification of compliance with the Second Request. Failure by any Party to meet the twenty (20) day production schedule, however, will cause all subsequent deadlines or dates specified in this letter to be extended day-for-day, until that Party has submitted all requested materials.

These custodian limitations apply only to the Parties' production of documents in response to the Second Requests. Except to the extent the Division and the Parties agree to the contrary in writing, each Party must produce data and other non-custodial documents and information responsive to the Second Requests regardless of where such data, documents, and

2

information are located.

        B.       <u>Rolling Production of Documents</u>

The Parties must make rolling productions of documents responsive to the Second Requests according to the following schedule:

*For Plaid, which will use a technology assisted review ("TAR") process:*

With the exception of non-privileged documents pulled in good faith due to a preliminary determination of privilege and documents to be redacted for privilege, the Parties must produce all responsive, non-privileged documents no later than thirty (30) days before the Compliance Date.

Documents withheld in good faith for privilege review but determined not to be privileged and documents redacted for privilege must be produced no later than ten (10) days before the Compliance Date. If any such production of documents initially withheld for privilege review or redaction includes more than a *de minimis*[1] volume of documents *for any single custodian*, the producing Party may not certify compliance until thirty (30) days after completion of this production.

A complete privilege log must be produced no later than five (5) days before the Compliance Date. If a Party must produce documents from Additional Custodians, a privilege log covering documents withheld from the production of documents for those Additional Custodians must be produced no later than five (5) days after production from the Additional Custodians.

*For Visa, which is not using a TAR process:*

With the exception of non-privileged documents pulled in good faith due to a preliminary determination of privilege and documents to be redacted for privilege, the Parties must produce all responsive, non-privileged documents from the files of Group A Custodians no later than forty-five (45) days before the Compliance Date. The Parties must produce all responsive, non-privileged documents from the files of Group B Custodians no later than thirty (30) days before the Compliance Date.

Documents withheld in good faith for privilege review but determined not to be privileged and documents redacted for privilege must be produced no later than twenty (20) days after the relevant document production deadline for each custodian group. If any such production of documents initially withheld for privilege review or redaction includes more than a *de minimis*[2] volume of documents *for any single custodian*, the producing Party may not certify

---

[1] A production will be deemed *de minimis* if it constitutes less than five percent (5%) of the number of records in that Party's total production <u>for that custodian</u>.
[2] A production will be deemed *de minimis* if it constitutes less than five percent (5%) of the number of records in that Party's total production <u>for that custodian</u>.

compliance until, for Group A Custodians, forty-five (45) days after completion of this production, and for Group B Custodians, thirty (30) days after completion of this production.

A complete privilege log must be provided to the Division no later than five (5) days before the Compliance Date. If a Party must produce documents from Additional Custodians, a privilege log covering documents withheld from the production of documents for those Additional Custodians must be produced no later than five (5) days after production from the Additional Custodians.

      C.      Data Production

In order to comply with the Second Requests, each Party must, inter alia, produce to the Division all data that are responsive to its Second Request and that are in that Party's possession, custody, or control on or before the Compliance Date. It is agreed, however, that certain data will be produced on a rolling basis before the Compliance Date according to the schedule set forth below.

As early as practicable, but in no event less than sixty (60) days prior to the Compliance Date, each Party will produce a complete response to Specification 1(f) in the Visa Second Request and Specification 1(g) in the Plaid Second Request. The Parties acknowledge that the Division must be in receipt of the Specification 1(f) response before negotiating the scope of the remainder of the Parties' data productions, and that a Party's delay in responding to Specification 1(f) may delay a Party's entire data production and the timing of its certification of compliance with the Second Request as set forth in this Timing Agreement.

No Party will certify compliance until forty-five (45) days after producing a copy, at the most granular[3] level available, of all profit-and-loss reports generated in the normal course of business since January 1, 2016 for Visa and since January 1, 2017 for Plaid, including any line items for revenues, costs, and profit margins.

No Party will certify compliance until thirty (30) days after the Party has produced, for any database or data set used by the Party from January 1, 2016 to the present for Visa and January 1, 2017 to the present for Plaid:

      (1)      transaction-level data (e.g., sales, invoices) for each Relevant Product,[4] including the dates, customer, customer location, products, revenues, and quantities relevant to each transaction;

      (2)      any data maintained in the normal course of business that describe the customers (e.g., customer types), products (e.g., product characteristics), or geographies (e.g., sales territories) referenced in the transaction-level data;

---

[3] "Granular" refers to the narrowest product, geography, and time frame available.
[4] The definition of Relevant Product will be as defined in each Party's Second Request.

      (3)      any data maintained in the normal course of business that identifies particular competitors and associates those competitors with specific business decisions made or market outcomes experienced by the company (e.g., wins, losses, bids, price discounts); and

      (4)      a definition for each variable provided in response to parts (1)-(3) above, including text descriptions of any codes used in any tables.

Data must be produced as ASCII delimited text files with variable names in the first row, using a delimiter that preserves the column alignment of the table.

All remaining responsive data must be produced on or before the Compliance Date.

    D.    <u>Reliance on Documents, Information, or Data Not Produced</u>

If in discussions with the Division, including in oral or written presentations, economic analyses, and white papers, any Party cites or relies upon information that was not produced to the Division, the Division will have fifteen (15) days to request production of that information from the Party. The Party must make a supplemental production of the responsive documents and information within seven (7) days of receipt of such a request from the Division. If the information cited by or relied upon by the Party was found in a central file or database that was not searched in response to the Second Request or was found in the files of an individual who is not among those identified on the Custodian List or who is an Additional Custodian, the Party must also conduct a thorough search of the central file, database, or individual's files for other responsive documents and information and include those in the supplemental production. If this supplemental production is not completed within seven (7) days of receipt of the request by the Division, all subsequent deadlines or dates specified in this letter will be extended day-for-day from the date that the supplemental production was due until the ultimate date of production of such responsive documents and information.

    E.    <u>Form of Production</u>

Unless otherwise agreed to in writing by the Division, all documents and data produced in response to the Second Requests must be produced in a format that conforms to the instructions contained in the letter regarding Form of Production of ESI Documents in Response to the Second Request and the letter's attachments ("ESI Letter"). If electronic media is produced that does not conform to the specifications, or is otherwise infected or corrupted, the Division will promptly notify the relevant Party, and the Party must produce a replacement as expeditiously as possible.

If a replacement production is necessary, all subsequent deadlines or dates specified in this letter will be extended day-for-day for the amount of time between the date of the original production and the receipt by the Division of a replacement production that is not infected or corrupted and conforms to the instructions contained in the ESI Letter.

F.      <u>Deficiencies</u>

As soon as practicable upon discovery of any deficiencies in a Party's response to the Second Request, but in any event no later than twenty-five (25) days after the Party has certified compliance with the Second Request, Division staff will notify the Party in writing of any deficiency. The Party, within ten (10) days of receiving any such notice, either will (a) remedy the alleged deficiency or (b) inform Division staff in writing that it believes there is no deficiency. The Division will then have ten (10) days in which to issue a formal deficiency letter ("Non-Compliance Notice"). Failure by the Division formally to issue a Non-Compliance Notice within that time period will constitute a waiver of the claimed deficiency such that the deficiency will not prevent the Party from having complied with the Second Request. A Party may appeal a Non-Compliance Notice in accord with DOJ's standard appeals procedure for Second Request compliance matters, set forth at http://www.justice.gov/atr/public/8430.htm.

If a Party must make a supplemental production after it has been notified in a Non-Compliance Notice of an alleged deficiency, all subsequent deadlines or dates specified in this letter will be extended day-for-day until the date of completion of the supplemental production. In particular, if a Party makes a supplemental production after the Party has certified compliance, the Compliance Date will be reset to the date of the supplemental production, including for purposes of establishing the Closing Date.

If the Division notifies a Party in writing of a deficiency later than twenty-five (25) days after the Party has certified compliance, the Party must remedy the deficiency within twenty (20) days of receiving such notice. Under these circumstances, however, no other deadlines or dates specified in this letter, including the Compliance Date, will be extended.

III.    <u>Conduct of Investigation</u>

A.      <u>Depositions</u>

Visa agrees to make executives and employees available to the Division for up to ten (10) Civil Investigative Demand ("CID") depositions. Plaid agrees to make executives and employees available to the Division for up to seven (7) CID depositions. No later than fourteen (14) days after the Compliance Date, the Division will: (1) provide a tentative list of Party executives or employees to be deposed; and (2) tentatively identify in writing the topic(s) that the Division proposes to cover in any 30(b)(6)-style deposition. Nothing precludes the Division, however, from taking depositions of Party executives or employees prior to the Compliance Date.

Within five (5) days of receiving a 30(b)(6)-style deposition CID, and for each topic that is identified, the Party receiving such a CID must designate one or more officers, directors, managing agents, or other persons to testify on behalf of the Party regarding the topic(s) identified in the CID. Testimony from all deponents taken pursuant to a single 30(b)(6)-style deposition CID will count as only one (1) CID deposition against the Division's limit of twelve (12) CID depositions per Party, and the Division will issue no more than two (2) 30(b)(6)-style deposition CIDs to each Party.

The Parties will make each witness available for seven (7) testifying hours, except that: (1) upon request by the Division, the Parties must make up to two (2) witnesses available for fourteen (14) testifying hours; and (2) any individual made available for a 30(b)(6)-style deposition may be noticed for an additional non-30(b)(6)-style deposition, in which case the Parties will make such witnesses available for an additional day of testimony.

Deposition dates will comport, to the extent practicable, to the order in which the Division wishes to take the depositions. Depositions will take place at the Division's offices located at 450 Fifth Street NW, Washington, DC, or, if necessary in light of developments in the unfolding COVID-19 situation, at another location or by video conference as determined by the Division in its sole discretion. Depositions may proceed simultaneously, in the Division's discretion. The Parties agree to make witnesses available such that depositions may be completed no later than fourteen (14) days before the Closing Date or ten (10) days after the deposition CID is served, whichever is later. In the event one or more of the depositions cannot be scheduled within the time frame noted in this paragraph, the Closing Date will be extended on a day-for-day basis until all depositions have been completed.

B. <u>Knowledgeable Personnel</u>

Upon reasonable request of Division staff, the Parties will use reasonable efforts to make available, within five (5) days of any Division request, representatives who can explain each Party's data and representatives who can explain each Party's interrogatory responses to the Second Request. This will enable Division staff to make reasonable use of this material in its evaluation of the Proposed Acquisition.

C. <u>Communication/Exchange of Information</u>

During the course of the investigation, Division staff, including representatives of the Economic Analysis Group, will meet with the Parties, either in person or by phone, as reasonably requested by the Division or either Party, to promote a continuing dialogue regarding the facts and the relevant legal and economic issues and to discuss progress in meeting the agreed-upon schedule discussed in this letter. The Division and the Parties intend that the ongoing dialogue include an exchange of information regarding any substantive issues, theories, or questions that the Division may have regarding the Proposed Acquisition. The Parties are encouraged to provide the results of their own economic and econometric analyses, and any underlying documents, data, or workpapers, to Division staff. Division staff will make reasonable efforts to reciprocate within applicable confidentiality constraints.

D. <u>White Papers and Economic Studies</u>

If the Parties submit any white papers or economic or econometric studies, they simultaneously will identify all data and documents upon which those papers or studies are based and provide all related work papers and underlying raw data not previously produced.

      E.      <u>Front Office Meetings</u>

If the Division has continuing concerns about the Proposed Acquisition, the Parties will be given an opportunity to meet with the appropriate Division Front Office personnel, including the relevant Deputy Assistant Attorney General and/or the Assistant Attorney General. In the event the Parties intend to produce white papers or economic data or analyses in any presentation to Division Front Office personnel, the Parties must submit to Division staff the written presentation or economic analysis at least five (5) days prior to the Front Office meeting.

IV.    <u>Court Proceedings</u>

      A.      <u>No Declaratory Judgment</u>

The Parties will not initiate a declaratory judgment action against the Division relating to the Proposed Acquisition.

      B.      <u>Completion of Proposed Acquisition</u>

If the Division files a complaint seeking to enjoin the Proposed Acquisition that is not filed at the same time as a proposed final judgment, the Parties agree that they will not close, consummate, or otherwise complete the Proposed Acquisition until 12:01 a.m. on the tenth (10th) day following the entry of a judgment by a court, and will close only if a court enters an appealable order that does not prohibit consummation of the transaction. The Parties agree that the Division need not seek a temporary restraining order or a preliminary injunction.

      C.      <u>Post-Complaint Discovery</u>

In consideration of the limitations imposed on the Division by this letter and to ensure that the Division has adequate time to prepare a full presentation of its case for a court in the event of the need for a litigated challenge to the Proposed Acquisition, the Parties will not object to a reasonable post-complaint discovery period prior to any trial on the merits. The Parties further agree not to argue to a court that pre-complaint discovery by the Division should forestall or otherwise limit post-complaint discovery. In particular, the Parties acknowledge that compliance with the Second Requests—with the substantial limitations on numbers of Second Request document custodians and numbers of CID depositions agreed to by the Division pursuant to this letter—is not sufficient to prepare the Division for a trial on the merits and does not constitute the production of all documents that are responsive or relevant to the Division's claims under the Federal Rules of Civil Procedure.

      D.      <u>Expert Disclosures</u>

The Division and the Parties agree that expert disclosures, including the Division's or each Party's expert reports, in any litigation will be conducted in accordance with Federal Rule of Civil Procedure 26(a)(2) and 26(b)(4) except that neither the Division nor the Parties must preserve or disclose, including in expert deposition testimony, the following documents or information:

(1) any form of oral or written communications, correspondence, or work product not relied upon by the expert in forming any opinions in his or her final report shared (a) between the Division or any Party's counsel and the Division's or the Party's own testifying or non-testifying expert(s), (b) between any agent or employee of the Division or Party's counsel and the Division or the Party's own testifying or non-testifying expert(s), (c) between testifying and non-testifying experts, (d) between non-testifying experts, or (e) between testifying experts;

(2) any form of oral or written communications, correspondence, or work product not relied upon by the expert in forming any opinions in his or her final report shared between experts and any persons assisting the expert;

(3) the expert's notes, except for notes of interviews participated in or conducted by the expert, if the expert relied upon such notes in forming any opinions in his or her final report;

(4) drafts of expert reports, affidavits, or declarations; and

(5) data formulations, data runs, data analyses, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

The Division and the Parties agree that the following materials will be disclosed:

(1) all final reports;

(2) a list by bates number of all documents relied upon by the testifying expert(s) in forming any opinions in his or her final reports;

(3) copies of any materials relied upon by the expert not previously produced that are not readily available publicly;

(4) a list of all publications authored by the expert in the previous ten (10) years and copies of all publications authored by the expert in the previous ten (10) years that are not readily available publicly;

(5) a list of all other cases in which, during the previous four (4) years, the expert testified at trial or by deposition, including tribunal and case number; and

(6) for all calculations appearing in the final reports, all data and programs underlying the calculations (including all programs and codes necessary to replicate the calculations from the initial ("raw") data

9

>>files and the intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the final report) and a written explanation of why any observations in the raw data were either excluded from the calculations or modified when used in the calculations.

> E. <u>Retention of Attorney Communications</u>

The Division and the Parties agree that neither the Parties nor the Division must preserve or produce in discovery the following categories of documents:

> > (1) documents sent solely between outside counsel for the Parties (or persons employed by or acting on behalf of such counsel) or solely between counsel of the United States (or persons employed by the United States Department of Justice); and

> > (2) documents that were not directly or indirectly furnished to any non-Party, such as internal memoranda, authored by the Parties' outside counsel (or persons employed by or acting on behalf of such counsel) or by counsel for the United States (or persons employed by the United States Department of Justice).

> F. <u>Retention of Electronic Information</u>

The Division and the Parties agree that neither the Parties nor the Division must preserve or produce in discovery the following categories of electronically stored information for this matter:

> > (1) voicemail messages, except in the case where they are contained within the Parties' or Division's e-mail systems;

> > (2) e-mail or other electronic messages sent to or from a personal digital assistant or smartphone (e.g., Blackberry handheld), provided that a copy of such e-mail or message is routinely saved and preserved elsewhere for potential production in discovery;

> > (3) other electronic data stored on a personal digital assistant or smartphone, such as calendar or contact data or notes, provided that a copy of such information is routinely saved and preserved elsewhere for potential production in discovery;

> > (4) temporary or cache files, including Internet history, web browser cache, and cookie files, wherever located; and

> > (5) server, system, or network logs.

V.  Term of Agreement

Unless otherwise amended in writing by agreement of the Division and the Parties, this agreement and all of its terms will remain in effect until the Division has closed its investigation or the Parties have closed or abandoned the Proposed Acquisition.

* * * * * * *

Please indicate your agreement with the above terms by signing and returning a copy of this letter.

Sincerely,

Mark R. Meador
Trial Attorney
U.S. Department of Justice
Antitrust Division

SO AGREED:

Ben Labow
Counsel for Plaid Inc.

Steve Sunshine
Counsel for Visa Inc.

**Attachment A – Custodian List**

*Visa Inc.*

**Group A**

1. Al Kelly, Chairman and CEO
2. Vasant Prabhu, Vice Chairman & Chief Financial Officer
3. William Sheedy, Senior Advisor to Visa's Chairman and CEO
4. Jack Forestell, EVP, Chief Product Officer
5. Oliver Jenkyn, Regional President North America
6. Robert Hedges, SVP, Strategic Initiatives
7. Andrew Westergren, SVP, Corporate Strategy & Development
8. Jonathan Kissane, SVP, Corporate Development and M&A
9. Michael Milotich, SVP, Corporate Finance & IR
10. Brian Cole, SVP, Head of Regional Product Solutions – North America
11. Matthew Dill, SVP, Global Head – Strategic Partnerships & Ventures
12. William Sheley, SVP, Global Head of Visa Direct
13. Kirk Stuart, SVP, Head of Merchant, NA, Merchant Sales & Solutions – Americas
14. J. Michael Niczyporuk, Contractor

**Group B**

15. Ryan McInerney, President
16. William Knupp, SVP, Global Interchange & Pricing
17. Kevin Jacques, Vice President
18. Chris Baker, SVP, NA Retail & Grocery, Merchant Sales & Solutions - Americas
19. Veronica Fernandez, VP, eCommerce & Marketplace - MSS
20. Sharon Haines, SVP, Everyday Spend, Merchants Sales & Solutions - Americas

21. Tom Brooks, Head of Regional Accounts, North America

22. David Cramer, Head of Super Regional Accounts, US Financial Institution Sales

23. David Rolf, VP Corporate Development and Head of Strategic Opportunites

24. Benjamin Gigot, Vice President

25. Rubail Birwadker, VP, Business Development, Global Partnerships

*Plaid Inc.*

1. Zach Perret, CEO and Co-Founder

2. William Hockey, Co-Founder and Board Member

3. Sima Gandhi, Head of Business Development

4. Pouya Fatemi, Head of Finance

5. Jason Pate, Head of Corporate Strategy and Development

6. Baker Shogry, Head of Product

7. Eric Sager, COO

8. Paul Williamson, Head of Sales

9. Carl Tremblay, Head of Growth

10. Lowell Putnam, Head of Partnerships (Quovo Co-Founder and former Quovo CEO)

11. Josh Kovler, Head of Business Operations

12. Eric Morse, Product Manager

13. Nicholas Karvounis, Product Manager (Quovo Co-Founder and former Chief Product Officer)

14. Hayden Pirkle, Product Marketing Manager

15. Daniel Kenerson, Business Operations (limited to August 1, 2019 through October 31, 2019)

16. Sales Account Executives (limited to emails to or from customers or potential customers stored in Salesforce)