JOHN R. READ (DC Bar #419373)
john.read@usdoj.gov
MEAGAN BELLSHAW (CA Bar #257875)
meagan.bellshaw@usdoj.gov
CORY BRADER LEUCHTEN (NY Bar # 5118732)
cory.leuchten@usdoj.gov
SARAH H. LICHT (DC Bar #1021541)
sarah.licht@usdoj.gov
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 307-0468
Facsimile: (202) 514-7308

Attorneys for Plaintiff United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br>v.<br><br><br>VISA INC. and PLAID INC.,<br><br>*Defendants.* | Case No.: 4:20-cv-07810-JSW<br><br>**JOINT CASE MANAGEMENT STATEMENT AND DISCOVERY PLAN; [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH**<br><br>Date: December 18, 2020<br>Time: 11 a.m.<br><br>Judge: Hon. Jeffrey S. White |

Plaintiff United States of America and Defendants Visa Inc. and Plaid Inc. jointly submit this JOINT CASE MANAGEMENT STATEMENT AND DISCOVERY PLAN pursuant to the *Standing Order for All Judges of the Northern District of California*, Civil Local Rule 16-9, and the Court's November 23, 2020, Order (ECF 44). Pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure and Civil Local Rule 16-10(b), the parties respectfully request

that the Court adopt the undisputed provisions of this Order as the Case Management Order in this case and, as to disputed provisions (indicated herein in italics), request that the Court resolve the disputes.

## I.   JURISDICTION AND SERVICE

The basis for the Court's subject matter jurisdiction is Section 15 of the Clayton Act, as amended, 15 U.S.C § 25, and Section 4 of the Sherman Act, 15 U.S.C. § 4, as well as 28 U.S.C. §§ 1345, 1331, and 1337. The Court has personal jurisdiction over the Defendants and venue is proper in this Court. Both Defendants are headquartered and transact business in this judicial District. Counsel for Defendants, acting on behalf of Defendants, have accepted service of the Complaint and have waived formal service of summons. No parties remain to be served.

## II.   FACTS

### A.   Plaintiff's Position

The United States brought this suit to stop Visa, a monopolist in online debit, from extinguishing the competitive threat posed by Plaid, a nascent competitor poised to enter the online payments market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"). Visa is a monopolist in online debit transactions, controlling approximately 70% of the market. In 2019, there were roughly 500 million Visa debit cards in circulation in the United States. Because of its ubiquity among consumers, merchants have no choice but to accept Visa debit despite perennial complaints about its high cost. The fees charged by Visa and its partner banks cost U.S. merchants and consumers more than $6 billion every year. Visa's monopoly power in online debit is protected by significant barriers to entry and expansion, and Visa has long sought to protect its monopoly by thwarting those who challenge its position.

Plaid is a financial technology firm that is developing its own end-to-end pay-by-bank debit service product that directly threatens Visa's monopoly in online debit. With access to financial data from over 11,000 U.S. financial institutions and more than 200 million U.S. consumer bank accounts, Plaid powers numerous popular financial technology ("fintech") apps, such as Venmo, Acorns, and Betterment. When a consumer signs up for a Plaid-supported fintech app, she provides her bank login credentials, which Plaid uses to access the consumer's

financial institution and obtain the consumer's financial data. Plaid's established bank account connections position it to overcome the entry barriers protecting Visa's monopoly. Plaid plans to leverage its existing technology, combined with its relationships with financial institutions and consumers, to facilitate transactions between consumers and merchants in competition with Visa. Once deployed, Plaid's rival service would provide a reliable, less-expensive method for conducting online debit transactions, and "Plaid intended to 'steal[] share' and become a "formidable competitor to Visa and Mastercard.'" Compl. ¶ 8. On January 13, 2020, Visa agreed to acquire Plaid for approximately $5 billion, in part to eliminate the significant threat Plaid posed to its monopoly in online debit. Visa's CEO recognized "that the deal 'does not hunt on financial grounds,'" but "justified the extraordinary purchase price for Plaid as a 'strategic, not financial' move because '[o]ur US debit business i[s] critical and we must always do what it takes to protect this business.'" Compl. ¶ 12.

The United States contends that Visa's proposed acquisition of Plaid violates Section 2, and seeks to enjoin Visa from acquiring Plaid. Monopolists cannot have "free reign to squash nascent, albeit unproven, competitors at will." *United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001). The United States also contends that the proposed acquisition would violate Section 7 of the Clayton Act, 15 U.S.C. § 18. Section 7 of the Clayton Act was "designed to arrest the creation of monopolies 'in their incipiency,'" *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 505 n.13 (1974), and prohibits a monopolist from maintaining its monopoly by acquiring a firm that represents a nascent, but significant, competitive threat. Acquiring Plaid would further entrench Visa's monopoly in online debit, depriving merchants and consumers of competition that would likely result in substantial savings and more innovative online debit services.

### B.    Defendants' Position

Plaintiff seeks to enjoin this transaction, arguing that Visa's acquisition of Plaid is an attempt to "neutralize" a unique threat to Visa's alleged monopoly in a market for "online debit transactions." Defendants contend that each element of that argument is fundamentally incorrect on the facts. *First*, the relevant market alleged by Plaintiff does not reflect commercial realities.

1    For example, many "online" transactions, such as recurring bill payments and payments for

2    services, can also be accomplished "offline" via check or cash. In addition, even where a

3    transaction can only be accomplished "online," both consumers and merchants can and do use

4    alternative payment methods for such transactions, most notably credit. *Second*, even if one

5    accepted Plaintiff's gerrymandered market definition, Visa is not a monopolist. Fierce

6    competition from Mastercard alone undermines any notion that Visa is unconstrained in online

7    debit.

8           *Third*, Plaid is not a threat to Visa's debit position. Plaid's so-called "pay-by-bank"

9    (PBB) debit service does not exist today. Instead, Plaid has a limited number of research and

10   development products that are principally designed to help Plaid's fintech customers facilitate

11   peer-to-peer and account-to-account payments. Only a handful of Plaid's fintech customers are

12   currently using these products, which are only available in beta. In no universe could they be

13   seen as a potential rival to the established, sophisticated, two-sided debit networks trusted by

14   consumers and merchants alike. *Fourth*, numerous entities such as Mastercard, Discover,

15   American Express, PayPal, Apple, Google, Stripe, Square, Zelle, and FIS are better-positioned

16   than Plaid with respect to the capabilities necessary to build a PBB service—consumer

17   awareness of the PBB product, merchant acceptance of the product, and infrastructure and

18   expertise for securely processing payments. *Finally*, Visa is acquiring Plaid not because Plaid

19   represents a threat, but because it represents a tremendous opportunity. As Visa explained when

20   it announced the acquisition, Plaid's fintech-centric business opens new opportunities for Visa in

21   the United States and internationally, while the combination provides the opportunity for Visa to

22   deliver enhanced payment capabilities and related value-added services to fintech developers.

23   And through the acquisition, Plaid will be able to lean on Visa's brand, resources, and

24   international footprint to scale its products to benefit its customers, partners, and the broader

25   fintech market.

26   **III.   LEGAL ISSUES**

27           **A.      Plaintiff's Position**

28           The principal legal issues in this matter are as follows:

- Whether Visa is a monopolist under Section 2 of the Sherman Act, 15 U.S.C. § 2.
- Whether Visa's proposed acquisition of Plaid violates Section 2 of the Sherman Act, which makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." *Id.*
- Whether Visa's proposed acquisition of Plaid violates Section 7 of the Clayton Act, which prohibits transactions "where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or tend to create a monopoly." 15 U.S.C. § 18.

The United States maintains that Visa is a monopolist in online debit transactions and its acquisition of Plaid would violate Section 2's prohibition against monopolization. The transaction would also violate Section 7 because its effect may be substantially to lessen competition or tend to create a monopoly in the market for online debit transactions. Traditional antitrust jurisprudence recognizes that dominant firms should not be permitted to squash nascent competition before it has a chance to take root. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001) (en banc) (per curiam) ("[I]t would be inimical to the purpose of the Sherman Act to allow monopolists free reign to squash nascent, albeit unproven, competitors at will . . . ."); Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 912b (5th ed. 2020) ("But when the dominant firm in the market has a market share satisfying the Sherman Act § 2 standards for monopoly or attempt, a 'lessening' of competition is not essential to illegality. Such a merger tends to maintain a monopoly by cutting off an avenue of future competition before it has had a chance to develop. As a result, condemnation under § 2 is appropriate.").

### B.    Defendants' Position

Plaintiff acknowledges that the merging parties do not currently compete with each other, but seeks to enjoin the transaction because Plaid will supposedly compete against Visa at some undefined point in the future—a so-called "actual potential competitor." Plaintiff contends that

-5-

1   Visa's acquisition of Plaid should therefore be enjoined under either Section 7 of the Clayton Act

2   or under Section 2 of the Sherman Act.

3          Section 7 of the Clayton Act is the statute under which mergers have been challenged

4   since the passage of the statute in 1950, as it was specifically enacted to prohibit mergers and

5   acquisitions whose effect "may be substantially to lessen competition, or to tend to create a

6   monopoly."   And, while a Section 7 "actual potential competition" theory such as the

7   Department of Justice ("DOJ") posits here has never been endorsed by the Supreme Court or the

8   Ninth Circuit, other courts have developed a body of case law that is unfavorable to the DOJ. To

9   the extent this Court agrees that "actual potential competition" is a cognizable theory of harm

10  under Section 7 of the Clayton Act, and applies the elements established by the out-of-Circuit

11  case law—*i.e.*, that plaintiff must show that (a) the relevant market is highly concentrated, (b)

12  one of the merging parties is likely to enter into competition in that market within a reasonable

13  period of time, (c) few other potential entrants exist, and (d) entry by the alleged merging-party

14  potential competitor will produce substantial pro-competitive effects—Defendants' position is

15  that none of these factors can be satisfied here.

16         Plaintiff also brings an entirely novel claim under Section 2 of the Sherman Act, but

17  challenging the exact same conduct, and seeking the exact same relief.[1] Defendants expect that

18  DOJ will argue that its burden to enjoin the acquisition under its putative Section 2 claim is

19  somehow *lower* than under Section 7. As a legal matter, that is incorrect. *First*, the standards of

20  Section 2 are *more* demanding than those of the Clayton Act, as the Supreme Court recognized

21  decades ago. *See Brown Shoe Co.*, 370 U.S. 294, 328-29 (1962) ("[T]he tests for measuring the

22  legality of any particular economic arrangement under the Clayton Act are to be less stringent

23  than those used in applying the Sherman Act."); *see also United States v. Crocker-Anglo Nat'l

24  Bank*, 223 F. Supp. 849, 859 (N.D. Cal. 1963) ("Since the merger does not violate the Clayton

25

26

27  _____

    [1]     Far from "traditional antitrust prudence," Plaintiff's only support for their contention that
28  the acquisition of an alleged potential competitor violates Section 2 is a treatise, which does not
    cite a single case holding that an acquisition of a potential competitor can, standalone, violate
    Section 2.

Act, the possibility that it might be held to violate the more stringent standards of the Sherman Act seems most unlikely."); *See also Int'l Tel. & Tel. Corp. v. Am. Tel. & Tel. Co.*, 481 F. Supp. 399, 404 (S.D.N.Y. 1979) ("[S]ection 7 has been interpreted to proscribe a broader range of conduct than that forbidden by the Sherman Act. . . . Since the market foreclosure in this case does not even approach the level required under the Clayton Act, it is clearly de minimis under the more stringent standard of the Sherman Act."). *Second*, as a matter of statutory construction, the prohibitions of general statutes must be viewed in the context of subsequently-enacted specific statutes. Here, Section 7 specifically governs the legality of mergers whereas Section 2 is a generalized monopolization statute. The DOJ cannot use that more general statute to circumvent the elements of Section 7 designed to regulate specific conduct.[2] *Third*, to Defendants' knowledge, no court has ever endorsed the use of Section 2 to enjoin a prospective merger or to find illegal the acquisition of a potential competitor. As a result, another threshold legal issue here is whether DOJ's "nascent competitor" acquisition theory is a cognizable theory of harm under Section 2, and if so, whether the standard for determining whether an acquisition target is a potential entrant is the same under Section 2 as under Section 7 (and whether Plaid satisfies that test here). DOJ, as expected, contends that the out-of-Circuit decision in *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), supports its view that Section 2 is less demanding in this context. Defendants submit that that position is legally incorrect and that the *Microsoft* case is factually distinguishable. Indeed, Defendants note that DOJ's reading of

---

[2]      *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("The 'classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.' This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand.") (internal citation omitted); *Hawaii v. Trump*, 859 F.3d 741, 780-781 (9th Cir.), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017) (holding "[w]ell-settled interpretive canons" do not allow for a "'narrow, precise, and specific' statutory provision" to be overridden by a provision "'covering a more generalized spectrum' of issues.").

1    *Microsoft* was recently rejected by one of the judges who sat on the *Microsoft* court.[3] *Fourth,*

2    and finally, Section 2 presents *additional* issues not required for a Section 7 claim, including

3    whether Visa possesses monopoly power in a properly defined relevant market, and whether a

4    Section 2 claim can be maintained at all when the conduct is supported, as here, by legitimate

5    business justifications. *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 369 (9th Cir. 1988)

6    (recognizing that Section 2 liability cannot attach if there was a legitimate business justification

7    for the challenged conduct). Defendants submit that none of these elements can be satisfied.

8    **IV.    MOTIONS**

9           Defendants filed, the United States did not oppose, and the Court granted an

10   Administrative Motion for Expedited Case Management Conference. There are no pending

11   motions.

12          **A.        Dispositive Motions**

13          Defendants filed Answers to the Complaint on November 27, 2020. In an effort to

14   streamline the case and narrow the issues factually and legally to be tried, Defendants are

15   considering filing a narrow motion under Rule 12(c) of the Federal Rules of Civil Procedure,

16   seeking dismissal of Plaintiff's Section 2 claim, raising arguments that Defendants have been

17   discussing with DOJ since DOJ first raised the prospect of such a claim two months ago.

18   Additionally, limiting the case at this juncture will streamline the issues for trial. Defendants

19   attach the form of motion as Exhibit A and, if appropriate, would file the motion in accordance

20   with the Court's procedures, should the Court consider such a motion an efficient means of

21   potentially narrowing the issues for trial.

22          The United States believes that attaching Defendants' Rule 12(c) motion, which the

23   United States has not seen, to this joint case management statement is an inappropriate attempt to

24

25

26

27   [3]    *See* Douglas H. Ginsburg & Koren W. Wong-Ervin, *Challenging Mergers Under Section*
28   *2*, Competition Policy International, May 25, 2020, at 4, available at
     https://www.competitionpolicyinternational.com/challenging-consummated-mergers-under-
     section-2-2/.

present Defendants' arguments to the Court without a mechanism for the United States to respond in kind.

### B.    Investigative File Dispute

### 1. <u>Plaintiff's Position</u>

*The United States will produce documents in its investigative file that are responsive to Defendants' First Request for Production of Documents to Plaintiff United States, dated December 1, 2020, in accordance with the protective order entered by the Court (ECF 49) and the time for issuing, objecting and responding to discovery set forth in this Order.*

Defendants unjustifiably demand expedited production of Plaintiff's investigative file after stonewalling the United States for months by wrongfully withholding documents that would otherwise be part of that file. Unsatisfied with the general discovery deadlines jointly proposed by the Parties, Defendants seek expedited production of the United States' investigative file – which, aside from Defendants' own productions and testimony from Defendants' executives – consists primarily of third-party materials, including sensitive and highly confidential business information from Defendants' respective customers and competitors obtained by the United States during its investigation of the proposed transaction. There is no rule requiring early production of the government's investigative file in civil merger cases. In this case, Visa has rendered the investigative file incomplete by improperly withholding critical documents from the United States during the government's pre-complaint investigation pursuant to a spurious claim of privilege, *see* Declaration of Patricia Brink ("Brink Decl.") ¶ H, and by instructing its third-party consultant to refuse production of related documents in response to a government subpoena on the same flawed grounds. Moreover, Defendants are not prejudiced by the United States' position: the allegations contained in the Complaint are almost entirely drawn from Defendants' own documents and executives' testimony; the United States will identify the third parties from which it received investigative materials in its initial disclosures on December 17; and the United States will produce its investigative file to Defendants at the time required by Defendants' discovery request.

1    The United States proposed that both sides agree to reciprocal early discovery, namely

2  that if Visa would agree that the narrow privilege issue relating to the discrete set of critical

3  pricing strategy and competition documents withheld by Visa during the investigation is ripe for

4  adjudication by the Court, then the United States would agree to the early production of its

5  investigative file following the Court's entry of a valid Protective Order. *See, e.g.*, Pl. United

6  States' Statement in Supp. of Admin. Relief for an Expedited Case Mgmt. Conf. (ECF 43) at *5*.

7  To be clear, the United States has not demanded that Visa produce privileged documents as a

8  pre-requisite to receiving the United States' investigative file. Defendants' repeated invocation

9  of this falsehood is inappropriate.

10    Despite insisting that discovery in this matter proceed at breakneck speed, Defendants

11  have refused the United States' equitable proposal. If Defendants will not agree that a discrete

12  matter the parties have met-and-conferred over for months is ripe for adjudication, Defendants

13  should not be permitted to demand expedited discovery from the United States.

14    **2. Visa's Position**

15    *Plaintiff will produce its investigative file to Defendants immediately.*

16    DOJ has refused to provide Defendants with its investigative file despite Defendants'

17  repeated requests, ample precedent establishing an early handover of the investigative file in

18  other merger cases, and DOJ's acknowledgment that it has in other cases provided the

19  investigative file to other parties before the beginning of discovery. In fact, to Defendants'

20  knowledge, the DOJ has turned over the investigative file early on in every merger challenge it

21  has made since at least 2011. Although the parties met and conferred at length several times

22  over the prior three weeks, DOJ refused to acknowledge that a Rule 26(f) conference occurred

23  until December 7, 2020, and it appears that DOJ intends to delay producing the investigative file

24  until January 2, 2021 at the earliest. There is no reason—other than litigation tactics—for such

25  delay. Defendants are at a significant information disadvantage and are unable to adequately

26  prepare their defense without the investigative file while the DOJ had the benefit of a ten-month

27  investigation in which it availed itself of compulsory process before it chose to bring this

28  action. DOJ initially claimed that production of its investigative file is premature absent a

protective order, a discovery request and Visa's production of privileged documents.  But the court has now entered the protective order (ECF 49), which required plaintiff to send notice to third parties that provided materials to DOJ in connection with its investigation.   Third parties have until December 10, 2020 to seek additional protection from the court, but defendants are currently aware of only one such objection.   And Defendants served a document request for the investigative file on December 1, 2020.  DOJ's sole remaining basis for not providing the investigative file is Visa's refusal to produce to DOJ privileged documents that were withheld from production during the investigation.   DOJ's position that it will only give Defendants the investigative file if Visa voluntarily produces privileged documents is improper, attempting to use the ordinary turnover of the investigative file to force resolution of a privilege dispute.  Because DOJ has no valid basis for refusing to produce the investigative file to Defendants, Defendants believe briefing on this issue is unnecessary. Accordingly,  Defendants request that the Court order DOJ to immediately produce its investigative file.

### C.   Privilege Dispute

#### 1. <u>Plaintiff's Position</u>

*As part of its pre-complaint Investigation, the United States served Visa with compulsory process.  In response, Visa withheld certain responsive documents related to work performed by a third-party consultant, Bain & Company, concerning Visa's pricing strategy and competition in the markets alleged in the Complaint on the grounds of work product and attorney-client privilege.  The United States disagrees that these documents are privileged or subject to work-product protection, and also believes that any privileges have been waived.  The United States served its First Request for Production of Documents on Defendant Visa in this litigation seeking production of these documents on December 3, 2020.  This issue is ripe for adjudication.  The United States may file a motion to compel production of these documents without waiting for the time for Visa to respond or object to the document request to pass and without undertaking a new meet-and-confer process.  Any motion brought by the United States on this subject will briefed pursuant to the following expedited schedule and page limits: initial brief (15 pages), five*

1    *days for opposition (15 pages), and two days for reply (10 pages). The United States intends*

2    *expeditiously to file a motion to compel production of these documents.*

3           The United States seeks expedited resolution of a discrete privilege issue that initially

4    arose during its pre-complaint investigation of this matter. Between August and November

5    2020, the United States met and conferred telephonically or exchanged written correspondence

6    with Visa's counsel regarding this issue ten times without any resolution. Visa has withheld or

7    redacted as privileged numerous documents related to a Visa project worked on by its third-party

8    consultant, Bain, focused on the development of new pricing and competition practices,

9    including for Visa's debit business (the "Bain project"). Visa also instructed Bain to withhold

10   numerous documents on its behalf. The United States disagrees that the Bain project documents

11   are privileged or protected work product. Indeed, in deposition testimony Visa CEO Al Kelly

12   confirmed that the Bain project involved business strategy that was not related to the resolution

13   of any litigation, stating that Visa conducted this work through Bain and outside counsel because

14   he did not want these materials to appear in a public record. Brink Decl. ¶ F.

15          The United States disagrees that the Bain project documents are privileged or protected

16   work product. To date, Visa's only response to the United States' privilege challenge has been

17   to claw back approximately 200 additional Bain project documents that had initially been

18   produced (presumably because they were both facially and actually non-privileged). A

19   Department of Justice filter attorney – an attorney walled off from the investigation or litigation

20   of this matter – determined that the clawed back documents were indeed not privileged or

21   protected work product, yet Visa has yet to retract its claw back or withdraw its privilege claims.

22   Brink Decl. ¶ H. Those documents remain sequestered from United States' counsel of record in

23   this matter until the privilege dispute is resolved by the Court.

24          This Court has broad discretion to grant expedited, targeted discovery upon a showing of

25   good cause. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 274–78 (N.D. Cal. April

26   19, 2002) (shortening the time for discovery where, inter alia, defendants were not prejudiced by

27   the expedited discovery because the specific requests pre-dated the litigation, defendants had

28   been aware of the pending motion for nearly a month, and the documents were relevant and

subject to production in the ordinary course); *see also* Fed. R. Civ. P. 26(d)(1).  Good cause exists here.  The United States previously requested these documents during its investigation and has already served Visa with a discovery request calling for production of the Bain project documents, with a return date 30 days after the parties' Rule 26(f) conference.  There can be no real dispute that documents relating to Visa's pricing and competition strategy involving the products at issue in this lawsuit are relevant to determining whether Visa is a monopolist, the likely impact of the proposed acquisition on pricing, and whether its consummation will tend to increase Visa's market power.  Further, there is no prejudice to Defendants by expediting briefing on this issue: Defendants have refused every request to revisit its privilege and work product claims, and make no argument here that additional time would materially change Visa's position.  To the contrary, the United States will suffer prejudice if this matter is not expedited, particularly if the Court adopts Defendants' proposed discovery schedule.  If the United States must wait for Defendants' pre-determined objections, undertake a full meet-and-confer process, seek leave of Court to file a discovery motion, brief and await resolution of the privilege issue, and then wait for Defendants to produce documents pursuant to the Court's Order, it will be too late for the United States to meaningfully review and test the Bain project documents in deposition before discovery closes, rendering the documents no use at trial and prejudicing the United States.

Accordingly, the United States respectfully requests that this Court permit the United States to move to compel production of the Bain project documents responsive to United States' First Request for Production immediately and order expedited briefing on the narrow issue of whether these documents may be legally withheld or redacted for privilege or as attorney work product.  The United States further requests that this Court order briefing on this issue to proceed under the page limits set forth in the Court's standing order for ordinary, rather than discovery, motions, with the exception of limiting the United States' reply brief to ten pages instead of fifteen.  This issue is of critical importance to the United States and implicates factual issues and legal arguments relating to the attorney-client privilege, work product protection, and waiver, that will be difficult to fully brief for the Court in a more abbreviated manner.

2. **Visa's Position**

*Visa maintains that the documents sought are protected by the attorney-client privilege and/or work product protections and therefore were properly withheld. Although the United States only recently served Visa a request for discovery in this litigation, Visa does not object to resolution of this dispute on an expedited basis. Visa suggests the following schedule for resolution of this dispute: Visa will respond to the discovery request on an expedited basis, then meet and confer with the United States within 3 business days, after which the United States may file its initial brief. The United States' initial brief is limited to five pages; Visa's opposition brief is due five days after the opening brief and is limited to five pages; and no reply brief is permitted.*

Although the United States only recently served Visa a request for discovery in this litigation, Visa does not object to resolution of this dispute on an expedited basis.

During the Hart-Scott-Rodino investigation, Visa and the United States engaged on the privilege question. Visa produced hundreds of thousands of documents totaling millions of pages; at issue here are only a fraction of that number of documents withheld on the basis of a claim of privilege. Visa provided DOJ Staff with an explanation of its privilege claims over materials involving work performed by Visa's external advisor Bain & Company in support of outside counsel in other litigations, and further engaged on these privilege issues through the DOJ's "taint team" process (in which a DOJ attorney outside the investigation team assessed the privilege claims at issue). DOJ's declaration omits to mention that as part of this process, Visa provided taint counsel with a retention letter between Visa's outside counsel and Bain & Company, along with a declaration from Visa's in-house counsel attesting to facts supportive of Visa's privilege claims.

Following the above-described process, the United States did not invoke its authority to challenge Visa's claims of privilege. Instead, the DOJ filed a petition to enforce a third-party CID issued to Bain in the U.S. District Court for the District of Massachusetts seeking related privileged documents, knowing full well that that petition would not be decided before this suit was filed and unilaterally determining not to seek any expedited relief; DOJ withdrew that

petition upon filing the Complaint in this Court and told the Massachusetts district court judge that it would seek the documents in this litigation.

DOJ now appears to take the position that taint counsel's analysis (which was in any event not under Ninth Circuit law) is somehow determinative and ought to serve as persuasive authority to this Court. *Cf. In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) (in connection with a "taint team" process in the grand jury context, it was "reasonable to presume that the government's taint team might have a more restrictive view of privilege than [the privilege claimant's attorneys]," and while "the government taint team may have an interest in preserving privilege, . . . it also possesses a conflicting interest in pursuing the investigation"); see also id. (analogizing taint team's privilege review to "the government's fox [being] left in charge of the [privilege claimant's] henhouse," where the taint team "may err by neglect or malice, as well as by honest differences of opinion."). Moreover, DOJ's submission additionally omits to mention that while DOJ asserts that the privilege has been waived, Visa's counsel has not engaged with DOJ on that argument (which Visa disputes in any event). Finally, Visa will put forward all argument and evidence in support of its privilege claims in response to a motion to compel.

Visa suggests the following schedule for resolution of this dispute: Visa will respond to the discovery request on an expedited basis, then meet and confer with the United States within 3 business days, after which the United States may file its initial brief. The United States' initial brief is limited to five pages; Visa's opposition brief is due five days after the opening brief and is limited to five pages; and no reply brief is permitted.

## V.   AMENDMENT OF PLEADINGS

The United States does not intend to amend its pleadings at this time. The United States reserves the right to seek leave to amend its pleadings should Defendants file a motion under Federal Rule of Civil Procedure 12(c).

## VI.   EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f)

-15-

regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonable evidence in this action. The parties agree that the following categories of ESI need not be preserved:

> (1) documents sent solely between outside counsel for the Parties (or persons employed by or acting on behalf of such counsel) or solely between counsel of the United States (or persons employed by the United States Department of Justice);
>
> (2) voicemail messages, except in the case where they are contained within the Parties' or Division's e-mail systems;
>
> (3) e-mail or other electronic messages sent to or from a personal digital assistant or smartphone (e.g., iPhone), provided that a copy of such e-mail or message is routinely saved and preserved elsewhere for potential production in discovery;
>
> (4) other electronic data stored on a personal digital assistant or smartphone, such as calendar or contact data or notes, provided that a copy of such information is routinely saved and preserved elsewhere for potential production in discovery;
>
> (5) temporary or cache files, including Internet history, web browser cache, and cookie files, wherever located; and
>
> (6) server, system, or network logs.

## VII.   DISCLOSURES

Defendants served initial disclosures under the Federal Rules of Civil Procedure 26(a)(1) on November 27, 2020. The United States will serve initial disclosures on December 17, 2020, fourteen days after the Parties' Rule 26(f) Conference, as required by Rule 26(a)(1)(C). Visa shall supplement its initial disclosures to identify third parties no later than three days after receipt of the United States' Investigative File.

## VIII.   DISCOVERY

### A.   Status of Discovery

To date, each side has served a single request for production of documents related to issues for which the Parties are seeking expedited resolution: the United States, for certain

materials that it believes were improperly withheld under a claim of privilege by Visa during the investigation; and Defendants, for the turnover of the United States' investigative file, which Defendants contend is routinely provided to defendants in merger challenges before the start of discovery. No other discovery has been propounded. The Parties previously submitted and the Court entered a protective order governing the production and use of confidential information.

**B.      Production of Documents and ESI**

The Parties shall produce all documents and Electronically Stored Information (ESI) in accordance with the Department of Justice's Standard Specifications for Production of ESI, except when producing documents and ESI received from non-parties. Should either party issue any document subpoena on non-parties, the instructions in that subpoena shall conform with the above instructions on ESI.

**C.      Proposed Discovery Plan**

The Parties have met and conferred regarding a proposed discovery plan and agree on the following:

**1.      Definitions**

For purposes of this Order, "Party" means the Antitrust Division of the U.S. Department of Justice, Defendant Visa Inc., or Defendant Plaid Inc.

**2.      Discovery of Confidential Information**

Discovery and production of confidential information will be governed by the Protective Order entered by the Court in this action. When sending discovery requests, notices, and subpoenas to non-parties, the Parties must include copies of any Protective Orders then in effect.

**3.      Timely Service of Fact Discovery and Supplemental Discovery**

All discovery, including discovery served on non-parties, must be served in time to permit completion of responses by the close of fact discovery, except that Supplemental Discovery must be served in time to permit completion of responses by the close of Supplemental Discovery. For purposes of this Order, "Supplemental Discovery" means document and deposition discovery, including discovery served on non-parties, related to any

person identified on a side's final trial witness list who was not identified on that side's preliminary trial witness list (including document and deposition discovery related to entities related to any such person). Depositions that are part of Supplemental Discovery must be noticed within 3 days of exchanging the final trial witness lists.

### 4.     Subpoenas

A Party may serve a subpoena of the type described in Federal Rule of Civil Procedure 45(a)(4) upon serving the other Parties a notice and a copy of the subpoena. The Parties agree to accept electronic service (by email) of a notice and copy of the subpoena.

### 5.     Written Discovery on Parties

#### a.  Document Requests

There is no pre-determined limit on the number of requests for the production of documents that may be served by the Parties, but any requests must be proportional to the needs of the case as required by Federal Rule of Civil Procedure 26(b)(1). The Parties must serve any objections to requests for productions of documents within 7 business days after the requests are served. Within 2 business days of service of any objections, the Parties must meet and confer to attempt to resolve any objections and to agree on custodians to be searched. Responsive productions (subject to any objections or custodian issues that have not been resolved) must be made on a rolling basis and must begin no later than 21 days after service of the request for production. The Parties must make good-faith efforts to complete responsive productions no later than 28 days after service of the request for production, except for documents reasonably withheld for privilege but later determined not to be privileged which will be produced 30 days after the service of the request for production, and responsive productions must be completed no later than 14 days after resolution of objections and custodian issues. Notwithstanding any other part of this paragraph, in responding to requests for production of documents that are part of Supplemental Discovery, the Parties must (i) serve any objections to such requests for production of documents within 3 business days after the requests are served; (ii) make responsive

productions (subject to any objections or custodian issues that have not been resolved) on a rolling basis; (iii) begin such productions no later than 7 days after the requests are served; and (iv) complete such productions no later than 7 days after resolution of objections and custodian issues.

### b. Data Requests

In response to any requests for data or data compilations, the Parties will meet and confer in good faith regarding the requests. Throughout the meet-and-confer process, the Parties will work in good faith to complete production of data or data compilations no later than 28 days after service of the requests for production.

### c. Interrogatories

Interrogatories are limited to 10 (including discrete subparts) by the United States to each Defendant and to 10 (including discrete subparts) by Defendants collectively to the United States. The Parties must serve any objections to interrogatories within 7 business days after the interrogatories are served. Within 2 business days of service of any objections, the Parties must meet and confer to attempt to resolve the objections. The Parties must make good-faith efforts to provide complete answers to interrogatories no later than 28 days after service of the interrogatories.

### d. Requests for Admission

Requests for admission are limited to 5 by the United States to each Defendant and to 5 by Defendants collectively to the United States. Requests for admission relating solely to the authorship, authentication, or admissibility of documents, data, or other evidence (which are issues that the Parties must attempt to resolve initially through negotiation) do not count against these limits. Unless otherwise agreed, the Parties must respond in writing to requests for admissions within 21 days after service.

### e.  Internal Memoranda

The Parties agree that neither the Defendants nor the United States must preserve or produce in discovery internal memoranda that were not directly or indirectly furnished to any non-Party authored by Defendants' outside counsel (or persons employed by or acting on behalf of such counsel) or by counsel for the United States (or persons employed by the United States Department of Justice).  The Parties will neither request, nor seek to compel, production of any interview notes, interview memoranda, or a recitation of information contained in such notes or memoranda, except for such material relied upon by a testifying expert and not produced in compliance with Section VIII(C)(13).

### 6.  Written Discovery on Non-Parties

Each party must serve a copy of any discovery request to a non-party on the other side at the same time as the discovery request is served on the non-party.  Every discovery request to a non-party shall include a cover letter requesting that (a) the non-party Bates-stamp each document with a production number and any applicable confidentiality designation prior to producing it; and (b) the non-party provide to the other side copies of all productions at the same time as they are produced to the requesting party.  Each party requesting the discovery shall also provide to the other side copies of all written correspondence with the non-party concerning the non-party's response to or compliance with the discovery request (including any extensions, postponements or modifications) within 48 hours of the correspondence.  If a non-party fails to provide copies of productions to the other side, the requesting Party shall provide copies to the other Party, in the format the productions were received, within 3 business days after receipt of such materials from the non-party.  In addition, if a non-party produces documents or electronically stored information that are not Bates-stamped, the Party receiving those materials must produce to the other Parties a copy of such materials with Bates stamps within a timeframe appropriate to the volume and complexity of the materials received.

**7.      Depositions**

The United States is limited to 30 depositions of fact witnesses, and the Defendants collectively are limited to 30 depositions of fact witnesses, including depositions taken for the sole purpose of establishing the admissibility of documents produced by any Party or non-party. Each deposition of a Party to be taken under Federal Rule of Civil Procedure 30(b)(6) counts as one deposition, regardless of the number of witnesses produced to testify on the matters for examination in that deposition. The following depositions do not count against the deposition caps imposed by the preceding sentence: (a) depositions of any persons identified on a side's preliminary or final trial witness list, if that witness has not already been deposed in this litigation; (b) depositions of the Parties' designated expert witnesses; (c) depositions taken in response to Civil Investigative Demands; and (d) depositions taken for the sole purpose of establishing the location or authenticity of documents produced by any Party or non-party, provided that such depositions may be noticed only after the Party taking the deposition has taken reasonable steps to establish location, or authenticity through other means, and further provided that such depositions must be designated at the time that they are noticed as being taken for the sole purpose of establishing the location or authenticity of documents.

Parties will make witnesses available for deposition during fact discovery upon 14 days' notice, but will in good faith use best efforts to schedule depositions within 7 days after receiving notice. During supplemental discovery, Parties will make witnesses available for deposition within 5 days after receiving notice, but will in good faith use best efforts to schedule depositions within 3 days after receiving notice. During supplemental discovery, if a deposition is noticed within 3 days of exchanging the final trial witness lists, Parties must make the witness available for deposition no later than the close of supplemental discovery. In light of the COVID-19 pandemic, Parties will make their employees available for video depositions upon the request of any Party. Parties agree that taking video depositions of third-party witnesses is appropriate.

If a Party serves on a non-party a subpoena for the production of documents or electronically stored information and a subpoena commanding attendance at a deposition, the Party serving those subpoenas must schedule the deposition for a date at least 10 business days after the return date for the document subpoena. In the event that an opposing Party serves a separate subpoena on the same non-party and causes the date of production for that second document subpoena to result in fewer than 3 business days between that production date and the date scheduled for that non-party's deposition, the originally noticing Party may at its sole discretion postpone the date scheduled for the deposition for up to 3 business days following the second production date.

Depositions of fact witnesses are limited to no more than one (7-hour) day unless otherwise stipulated. During non-party depositions, the non-noticing side will receive at least two hours of examination time. If a non-party deposition is noticed by both sides, then time will be divided equally between the sides. Any time allotted to one side not used by that side in a non-party deposition may not be used by the other side, unless the side that does not use all of its allotted time agrees to allow the other side to use the remaining time. Notwithstanding any other provisions in this paragraph, if the United States notices the deposition of a non-party (including an employee of a non-party) to or with which a Defendant has made an offer, commitment, or agreement (including an agreement to divest or license assets) to attempt to address the United States' concerns about the Planned Transaction, then the United States will receive 7 hours of examination time for the deposition. Any Party may further depose any person whose deposition was taken pursuant to a Civil Investigative Demand, and the fact that such person's deposition was taken pursuant to a Civil Investigative Demand may not be used as a basis for any Party to object to that person's deposition. Depositions taken of Party witnesses pursuant to Civil

Investigative Demands will be deemed depositions taken pursuant to the Federal Rules of Civil Procedure for the purposes of use at trial and subject to the same treatment under the Federal Rules of Civil Procedure and Federal Rules of Evidence. Depositions taken of non-Party witnesses pursuant to Civil Investigative Demands may not be used at trial except for impeachment subject to the Federal Rules of Civil Procedure and Federal Rules of Evidence.

### 8.      Discovery from Agencies Within the Executive Branch

Defendants may not seek discovery from any agency within the executive branch of the federal government (including any employee of any such agency), other than the Department of Justice and the Consumer Financial Protection Bureau ("CFPB"). From entry of this Order until the conclusion of trial, Defendants may not submit requests under the Freedom of Information Act to any agency within the executive branch of the federal government other than the Department of Justice and CFPB for the purpose of assisting the defense of this litigation and may not take any steps to obtain responses to previously submitted requests for the purpose of assisting the defense of this litigation.

### 9.      Evidence from a Foreign Country

#### a.   Plaintiff's Position

*Before either side may offer documentary or testimonial evidence from an entity or person located in a foreign country, the other side must be afforded an opportunity by the entity or person (or both, when applicable) to obtain documentary and deposition testimony.*

Plaintiff does not intend to seek discovery from entities located outside the United States. Although Defendants did not identify any foreign entities or individuals in their initial disclosures, they nonetheless want to leave the door open to obtain discovery from as-yet-unidentified third parties located outside the United States, while failing to allow for adequate time to conduct international discovery in their proposed six-week discovery period. If Defendants want to use documents or testimony from foreign entities or individuals at trial, they

1   must build sufficient time into their schedule and Plaintiff must have an opportunity to test that

2   evidence through reciprocal, formal discovery instead of relying on third parties to "informally"

3   produce materials that could unfairly deprive Plaintiff of important impeachment materials and

4   this Court of a full record for its consideration of the merits. Plaintiff proposes that before either

5   party may offer documentary or testimonial evidence from an entity or person located in a

6   foreign country, the other side must be afforded an opportunity by the entity or person (or both,

7   where applicable) to obtain documentary and deposition testimony.

8               **b.  Defendants' Position.**

9        *Before either side may offer documentary or testimonial evidence from an entity or*

10  *person located in a foreign country, the other side must be afforded an opportunity by the entity*

11  *or person (or both, when applicable) to obtain deposition discovery. Neither side will use an*

12  *inability to obtain discovery compliant with the Federal Rules of Civil Procedure as a reason to*

13  *object to the introduction of evidence from an entity or person located in a foreign country. The*

14  *Parties agree that either side may offer into evidence documents obtained from an entity or*

15  *person located in a foreign country through informal document discovery, if the informal*

16  *discovery is reciprocal.*

17              **10.   Privilege Logs**

18       The Parties agree that the following privileged or otherwise protected communications

19  may be excluded from privilege logs: (1) documents or communications sent solely between

20  outside counsel for the Defendants (or persons employed by or acting on behalf of such counsel);

21  (2) documents or communications sent solely between counsel for the United States (or persons

22  employed by the United States Department of Justice); (3) documents or communications sent

23  solely between counsel for the United States (or persons employed by the United States

24  Department of Justice) and counsel for any state (or persons employed by any the office of the

25  attorney general of any state); (4) documents or communications sent solely between outside

26  counsel for either Defendant and inside counsel for either or both Defendants; (5) documents or

27  communications sent solely between counsel for the United States (or persons employed by the

28  United States Department of Justice); (6) privileged draft contracts; (7) draft regulatory filings;

(8) non-responsive, privileged documents attached to responsive documents; and (9) privileged documents or communications solely about this litigation sent on or after November 5, 2020 (the date the Complaint was filed) (a) between outside or inside counsel for the Defendants (or persons employed by or acting on behalf of such counsel) and either or both Defendants; and (b) between outside or inside counsel for a Defendant and employees of that Defendant. When non-responsive, privileged documents that are attached to responsive documents are withheld from production, however, the Parties will insert a placeholder to indicate a document has been withheld from that family and that document must be logged in the Party's privilege log. Privilege logs will comply with Fed. R. Civ. P. 26(b)(5).

**11.    Inadvertent Production of Privileged or Work-Product Documents or Information**

As authorized by Federal Rule of Evidence 502(d), the production of a document or information subject to a claim of attorney-client privilege, work-product immunity, or any other privilege or immunity under relevant federal case law and rules ("Produced Privileged Material") does not waive any claim of privilege, work product, or any other ground for withholding production to which the Party producing the documents or information otherwise would be entitled, provided that (a) the production was inadvertent; (b) the Party producing the documents or information used reasonable efforts to prevent the disclosure of documents or information protected by the attorney-client privilege, work-product immunity, or any other privilege or immunity; and (c) the Party producing the documents or information promptly took reasonable steps to rectify the error, including following Federal Rule of Civil Procedure 26(b)(5)(B).

A Party or Person claiming privilege or other protections for Produced Privileged Material must within three (3) days of learning of the production of such material notify in writing any and all Receiving Parties that received the Produced Privileged Material and provide sufficient information to the Receiving Party regarding the asserted privileges, in the form of a privilege log as outlined in Rule 26(b)(5) of the Federal Rules of Civil Procedure. Alternatively,

-25-

if a Receiving Party discovers a document that it believes to be Produced Privileged Material, the Receiving Party will promptly notify the Designating Party of what it believes to be the Produced Privileged Material. No Receiving Party will be found in violation of this Order for failing to recognize Produced Privileged Material.

After discovering or being notified of Produced Privileged Material, any Receiving Party may not use or disclose the inadvertently Produced Privileged Material in any way until the claim is resolved, and must take reasonable steps to retrieve the material if the Receiving Party disclosed it before being notified of or discovering the inadvertent production. In addition, within five (5) calendar days of discovering or being notified of Produced Privileged Material, any Receiving Party must return, sequester, or destroy the specified material and any copies. The Designating Party must retain a copy of the material until the resolution or termination of this Action. A Party may move the Court for an order compelling production of the material and present the information to the Court under seal for a determination of the claim. Any submission of privileged material for *in camera* review shall not constitute a waiver of any applicable material.

Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform that Party or Person that produced the materials of such occurrence.

This Order is not intended to impose on a Party a waiver of its rights to review its documents for privilege or any other reason (including to identify non-responsive documents) and the existence of this Order cannot be used to compel a Party to produce documents without review. Moreover, this Order does not mean that the cost of review should not be considered in

whether any particular discovery is proportionate (i.e., that the benefit of the discovery is not as great as the cost of said discovery including review).

### 12. Presumptions of Authenticity

Documents produced by Parties and non-parties from their own files will be presumed to be authentic within the meaning of Federal Rule of Evidence 901. Any good-faith objection to a document's authenticity must be provided with the exchange of other objections to intended trial exhibits. If the opposing side serves a specific good-faith written objection to the document's authenticity, the presumption of authenticity will no longer apply to that document and the Parties will promptly meet and confer to attempt to resolve any objection. Any objections that are not resolved through this means or the discovery process will be resolved by the Court.

### 13. Expert Witness Disclosures and Depositions.

Expert disclosures, including each side's expert reports, must be conducted in accordance with the requirements of Federal Rule of Civil Procedure 26(a)(2) and 26(b)(4), except as modified by this paragraph.

(a) Neither side must preserve or disclose, including in expert deposition testimony, the following documents or information:

(i) any form of oral or written communications, correspondence, or work product not relied upon by the expert in forming any opinions in his or her final report shared between:

(A) the expert and any persons assisting the expert;

(B) any Party's counsel and its expert(s), or between any agent or employee of Party's counsel and the Party's expert(s);

(C) testifying and non-testifying experts;

(D) non-testifying experts; or

-27-

        (E)      testifying experts;

(ii)      expert's notes, except for notes of interviews participated in or conducted by the expert, if the expert relied upon such notes in forming any opinions in his or her final report;

(iii)     drafts of expert reports, affidavits, or declarations; and

(iv)     data formulations, data runs, data analyses, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

(b)     The Parties agree that the following materials will be disclosed at the same time that each final expert report is served:

(i)      A list by bates number of all documents relied upon by the testifying expert(s) in forming any opinions in his or her final reports;

(ii)      copies of all materials relied upon by the expert in forming any opinions in his or her report that were not previously produced and that are not readily available publicly;

(iii)     a list of all publications authored by the expert in the previous 10 years;

(iv)     copies of all publications authored by the expert in the previous 10 years that are not readily available publicly;

(v)      a list of all other cases in which, during the previous 4 years, the expert testified at trial or by deposition, including tribunal and case number; and

(vi)     for all calculations appearing in the final report(s), all data and programs underlying the calculations, including all programs and codes necessary to replicate the calculations from the initial ("raw") data files, and the

intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the report and a written explanation of why any observations in the raw data were either excluded from the calculations or modified when used in the calculations.

Each expert will be deposed for only one (7-hour) day, with all 7 hours reserved for the side noticing the expert's deposition. Depositions of each side's experts will be conducted only after disclosure of all expert reports and all of the materials identified in Paragraph 13(b) for all of that side's experts.

## IX. CLASS ACTIONS

This is not a class action.

## X. RELATED CASES

There are no related cases.

## XI. RELIEF

Plaintiff requests that:

(a) that Visa's proposed acquisition of Plaid be adjudged to violate Section 2 of the Sherman Act, 15 U.S.C. § 2;

(b) that Visa's proposed acquisition of Plaid be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(c) that the Defendants be permanently enjoined and restrained from carrying out the proposed acquisition of Plaid by Visa or any other transaction that would combine the two companies;

(d) that the United States be awarded costs of this action; and

(e) that the United States be awarded such other relief as the Court may deem just and proper.

1   **XII.   SETTLEMENT AND ADR**

2       1.  **Plaintiff's Position**

3           Plaintiff does not believe this case is appropriate for resolution via ADR. Visa's

4   monopoly power and its actions to maintain that power by acquiring a nascent competitor are

5   significant issues for the public that necessitate resolution by a federal judge in open court. *See*

6   U. S. Dep't of Justice, *Updated Guidance Regarding the Use of Arbitration and Case Selection*

7   *Criteria*, at 3 (2020) (stating that matters of significant public interest or where "[a]rbitration will

8   result in a lost opportunity to create valuable legal precedent" are factors counseling against

9   arbitration). As set forth more fully below in Defendants' discussion regarding scheduling, the

10  question Defendants proposed for arbitration – whether Plaid is uniquely positioned to become a

11  significant competitor to Visa in online debit – is not a dispositive issue under either Section 2 or

12  Section 7.

13      2.  **Defendants' Position**

14          On December 2, 2020, Defendants formally proposed to DOJ that the parties agree to

15  binding arbitration to resolve Plaintiff's claims. Specifically, Defendants proposed arbitration on

16  the following narrow question:  Are Plaid's MoMo products uniquely positioned to become a

17  significant competitor to Visa's on-line debit products?  Because this question is key to

18  Plaintiff's Section 2 and Section 7 claims, Defendants believe removal of all other disputed

19  issues (i.e., monopoly power, legal standard, and efficiencies) would allow the case to be

20  narrowed to a single, clear dispositive question.  Under Defendants' proposal, if DOJ carried its

21  burden of proving that the answer to the proposed question is "yes," Defendants would abandon

22  the transaction.  But if the DOJ did not carry that burden, the DOJ would withdraw with

23  prejudice its challenge to the Defendants' transaction.  Narrowing the case to this single

24  outcome-determinative question would have conserved taxpayer and party resources through a

25  more efficient adjudication process. The DOJ declined to proceed with arbitration on this

26  narrow issue.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes _X_ No.

## XIV.   OTHER REFERENCES

The parties do not believe that this case is suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

## XV.   NARROWING OF ISSUES

Defendants propose a means of narrowing the issues for trial in section XVII. (Scheduling), below. The United States is always open to meaningful discussions to appropriately narrow the issues for trial, but disagrees with Defendants' proposals for the reasons set forth below. Before making their proposal less than forty-eight hours before filing, Defendants had refused to engage with the United States about narrowing of issues at trial; accordingly, the Parties have not had an opportunity to meet and confer about alternatives to Defendants' proposal.

## XVI.   EXPEDITED TRIAL PROCEDURE

The parties decline to proceed under General Order 64.

## XVII.   SCHEDULING

### A.   Plaintiff's Position

The United States respectfully requests that this Court adopt the United States' proposed schedule set forth below, with a trial start date of September 7, 2021, or at the Court's convenience thereafter. The United States' schedule will rapidly move this important matter to trial while simultaneously ensuring sufficient time for trial preparation.

#### 1.   Defendants' Last-Minute Proposal Misstates the Relevant Law

On November 23, the Court granted Defendants' Administrative Motion for an Expedited Case Management Conference (ECF 44), and directed the parties to meet and confer in accordance with the local rules and to jointly prepare and submit this case management statement. In violation of the spirit – if not the letter – of the Court's Order, Defendants proposed at the eleventh hour a drastic and unilateral reframing of the government's case. At 8:40 pm on Wednesday night, less

than forty-eight hours before the parties were set to file this statement and two-and-a-half weeks after the Court ordered the parties to meet and confer, Defendants set out in an email for the first time their intention to (i) submit with this joint statement a Rule 12(c) motion that the United States has not seen, in a blatant attempt to advocate its own (flawed) interpretation of the law without a mechanism for the United States to respond in kind; and (ii) request that this Court set aside the United States' lead Section 2 claim and order the parties to proceed to trial on a single issue that Defendants incorrectly argue is dispositive of the United States' claims.  Given the last-minute proposal, the parties have not meaningfully met and conferred on this proposal, and defense counsel did not make itself available for an initial discussion of its position until Thursday afternoon.

Defendants' proposal is procedurally and legally flawed.  First, while the United States does not object to Defendants filing a Rule 12(c) motion, it submits that any schedule must include time for the parties to brief and the Court to resolve Defendants' motion, for the United States to amend its pleading (with the Court's permission) if Defendants are successful, and for the parties to address any guidance the Court may offer in its order, including possible additional discovery.  Because proceeding with a motion to dismiss will likely lengthen the pre-trial period, it appears that Defendants are attaching, but not filing the motion so that the United States cannot fully respond to the legal arguments and to prejudice the Court on the merits of the United States' claim

Second, Defendants' purported "narrowing" is simply an attempt to recast the United States' allegations to avoid issues they do not want to face.  The United States has properly pled that Defendants' proposed acquisition violates Section 2, and in the alternative that the acquisition would violation Section 7.  Visa's desire not to have to defend whether it a monopolist in online debit and whether its acquisition of Plaid was designed to protect its monopoly power is not a valid reason to dismiss or set aside the United States' properly pled Section 2 claim under the guise of "narrowing" the issues for trial – especially without full briefing on the issue.  Nor is there any merit to Defendants' claim that the United States unnecessarily added a claim under Section 2 for the purpose of delaying adjudication of this matter or increasing the burden on Defendants.  The United States brought this litigation

pursuant to Section 2 because Visa is a monopolist.  It is well established that a monopolist's "activities are examined through a special lens: Behavior that might otherwise not be of concern to the antitrust laws – or that might even be viewed as procompetitive – can take on exclusionary connotations when practiced by a monopolist." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 488 (1992) (Scalia, J., dissenting); *see also McWane, Inc. v. FTC*, 783 F.3d 814, 836 (11th Cir. 2015) ("[T]he behavior of monopolists faces more exacting scrutiny under the antitrust statutes."); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005) ("Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist.").  Contrary to Defendants' assertion that the United States' Section 2 claim is "novel," the antitrust agencies have challenged many acquisitions by monopolists under Section 2. *See, e.g.*, Complaint, *F.T.C. v. Facebook, Inc.* (D.D.C. filed Dec. 9, 2020); Complaint, *F.T.C. v. Illumina, Inc.*, No. 9387 (F.T.C. filed Dec. 17, 2019); Complaint, *F.T.C. v. Mallinckrodt ARD Inc.*, No. 17-00120 (D.D.C. filed Jan. 25, 2017).  Courts have long agreed that such acquisitions can violate Section 2. *See United States v. Grinnell Corp.*, 384 U.S. 563, 576 (1966); *BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.*, 176 F. Supp. 3d 606, 619 (W.D. La. 2016) ("Courts continue to hold that acquisitions can give rise to anticompetitive conduct for the purposes of a section 2 claim").

Defendants' proposal would limit the scope of trial to a question that is not dispositive under either Section 2 or Section 7: whether Plaid is "uniquely positioned" to become a significant competitor to Visa's online debit products.  Defendants cite no legal authority for this proposition.  Indeed, the term "uniquely positioned" is a quotation used in the Complaint not to establish a new legal standard, but to reflect how Plaid – in its own ordinary course documents – described its own ability to deliver a differentiated payment product, immediately before the proposed acquisition.  Moreover, Defendants misstate or perhaps misunderstand the scope of both Section 7 and Section 2. Defendants improperly assume that the United States plans to litigate this case under an "actual potential competition" theory. That is only one particular theory of liability.   Neither Section 7 nor Section 2 is so limited.   Both Section 2 and Section 7 are violated when a monopolist such as Visa acquires a nascent competitor such as Plaid to

eliminate a significant competitive threat before that threat can take root. Visa's proposed narrowing not only fails to properly encompass the United States' theory of eliminating nascent competition, it fails entirely to address another theory of harm to competition alleged in the Complaint – that the acquisition enables Visa to raise entry barriers. *See* Compl. ¶¶ 68-73.

As the United States Court of Appeals for the D.C. Circuit explained in its seminal decision in *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), "the question in this case is not whether [two nascent threats to the monopolist] Java or Navigator would actually have developed into viable platform substitutes, but (1) whether as a general matter the exclusion of nascent threats is the type of conduct that is reasonably capable of contributing significantly to a defendant's continued monopoly power and (2) whether Java and Navigator reasonably constituted nascent threats at the time Microsoft engaged in the anticompetitive conduct at issue." *Id.* at 79; *see also Polypore Int'l, Inc. v. F.T.C.*, 686 F.3d 1208, 1216 n.10 (11th Cir. 2012) (noting that, in analyzing the acquisition of a nascent rival by a dominant firm, it is not "worthwhile to ascertain the number of rivals or the likelihood or time period in which another nascent rival will appear. The important point is that the acquisition eliminates an important route by which *competition could have* increased in the immediate future. It thus bears a very strong presumption of illegality that should rarely be defeated.") (emphasis added) (quoting 4 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 912a (3d ed. 2006)). As the D.C. Circuit determined in *Microsoft*, it was enough for establishing liability that the excluded companies "showed potential as . . . threats." 253 F.3d at 79. The same standard applies (and will be satisfied) here.

The United States agrees that both the Parties and the Court would benefit by narrowing the issues for trial. But a surprise last-minute proposal in what is supposed to be a joint statement reflecting the parties' meet and confer discussions is not an appropriate vehicle for doing so. The United States therefore respectfully requests the Court reject Defendants' proposal and instead set a trial date for early September for the reasons set forth below. The parties can continue to discuss ways to narrow the issue for trial, and, if successful, submit a stipulation to the Court along with a proposal to appropriately modify the case schedule. If the Court believes

1    further discussion between the parties is unnecessary, the United States asks that it be afforded
2    an opportunity to brief for the Court the appropriate legal standards under Section 2 and Section
3    7.

4        **2.      The United States' Proposed Schedule is Appropriately Expedited**

5        The United States understands and respects Defendants' desire to move quickly toward a
6    resolution that determines whether they can proceed with their merger. That is why it has proposed
7    an expedited schedule that balances the need for a timely decision with the need to ensure a fair
8    determination whether the proposed transaction is unlawful and would harm American merchants
9    and consumers. For example, the United States' proposal includes reasonable but still truncated
10   four-and-a-half-month period for fact discovery. Discovery about and from Visa's online debit
11   competitors, merchant and financial institution customers, Plaid's competitors, and other firms
12   Defendants claim are likely to enter the market will play an important role in preparing for trial.
13   By contrast, Defendants' proposed schedule, with only six weeks for fact discovery over the winter
14   holidays and in the middle of a worsening pandemic that has resulted in stay at home orders in
15   many parts of the country, would impose unreasonably tight timeframes on the United States and
16   third parties, and curtail the United States' ability to develop admissible evidence and present a
17   sufficient record for the Court's consideration.

18       In recognition of the vital role expert testimony usually plays in merger litigation, the
19   United States has also proposed an expert discovery schedule that allows sufficient time for the
20   parties to prepare and, importantly, respond to expert reports. Defendants, on the other hand,
21   propose only eleven days for expert responses and just one week for expert reply briefs.
22   Responsive expert reports cannot reasonably be written in that time frame. In past antitrust
23   litigations, Visa has filed simultaneous reports from six experts and has submitted reports of more
24   than 300 or even 600 pages in length. Defendants imposed these extraordinarily tight deadlines,
25   while simultaneously refusing to agree to reasonable limits on the number of experts or the length
26   of expert reports.

27       The United States' proposed schedule is tailored to the circumstances of this particular case
28   and designed to meet each of the pre-trial deadlines in this Court's standing orders without

-35-

deviation.  It also aligns with comparable government antitrust cases, including the scheduling order in the Department of Justice's most recent case challenging an acquisition of assets under Section 2, *United States v. United Continental Holdings*, No. 15-cv-07992-WHW-CLW (D.N.J. 2015, ECF 24) (224 days between filing the complaint and trial), and the last merger trial it litigated in the Northern District of California, *United States v. Bazaarvoice*, No. 13-cv-00133-EMC (N.D. Cal. 2013, ECF 29) (243 days), and is far faster than the median time to trial for civil cases in this district (approximately 890 days), *Federal Court Management Statistics, Northern District of California* (June 30, 2020), *available at* https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2020.

During the meet and confer process, Defendants offered no evidence of any harm that would require a trial in April instead of September.  The United States understands that Defendants intend to append (under seal) to this joint statement declarations in support of the claims of harm Plaid will suffer, however Plaid ignored the United States' repeated requests for this information and did not provide the United States with copies of the declarations until the morning of this filing.  Any claims of duress for a company purportedly worth $5.3 billion should be taken with an appropriate amount of skepticism, especially when the entity making such an allegation failed to provide any time for its claim to be tested.  The United States is reviewing the declarations and may provide additional information on this topic to the Court next week.

Any claims of purported harm must be weighed against the inconvenience to the Court of a rushed process and the prejudice to the United States and the American people of having insufficient time to prepare and present its monopolization case.  Further, the initial burden of mitigating this harm is Defendants' – if this acquisition is as beneficial as they posit, Defendants alone have the power to negotiate an extension of their transaction.  They would need no approval from the government or this Court.  Moreover, the Defendants can offer employees incentives to remain at Plaid until the litigation is resolved.  Defendants' amorphous and self-serving assertion that the market will miss out on efficiencies resulting from the acquisition if trial starts in September rather than April misses the critical point – the real risk of long-term, substantial harm

to consumers if a monopolist is allowed to short-circuit the litigation process and rush through an anticompetitive acquisition.

Although Defendants modified their proposed trial date to accommodate this Court's pre-trial standing orders, the interim deadlines necessary to meet Defendants' April 23, 2021, trial date are more even prejudicial to the United States than their initial proposal. For instance, Defendants' proposal requires the parties to exchange initial witness lists just ten days after the December 18 Case Management Conference, and allows just six weeks for fact discovery, reduced from nine in their previous proposal. This extremely compressed schedule is disproportionate to the needs of the case and ignores the disruptions caused by both end-of-the-year holidays and the ongoing global pandemic. Third parties, in particular, will be hard pressed by January 29 to review, serve and resolve objections, and produce documents in response to even the most narrowly tailored discovery requests and then prepare and sit for depositions, much less for the Parties to meaningfully narrow their requests, review their documents, and take productive depositions.

### 3.     Impact of the Parties' Timing Agreement

The Court's November 23, 2020, Order directed the parties to brief the impact of Section IV.B of the Timing Agreement dated May 15, 2020, on the trial date proposed. [4] The United States submits that this provision precludes Defendants from seeking to limit discovery in this litigation based on the government's pre-complaint investigation. Defendants waived this argument in exchange for the government's agreement to substantially curtail the scope of its investigation. Bellshaw Decl. Ex. A at § IV(C); *see also id.* §§ II(A), II(C), III(A) (setting limitations on pre-

---

[4] In its Statement of Support for Administrative Relief (ECF 43), the United States incorrectly identified Section IV.C of the Timing Agreement as Section IV.B. The United States understands that the Court was asking the parties to address Section IV.C. of the Timing Agreement, which was misidentified as a result of the government's error. Section IV.B. of the Timing Agreement states that Defendants agree not to close their proposed acquisition until ten days after entry of the Court's judgment in this litigation. Declaration of Meagan Bellshaw ("Bellshaw Decl.") Ex. A. That provision is also included in the parties' joint proposed Case Management Order at Section XXI(A). This provision is important, because it affords the parties and the Court the time necessary to adjudicate the current dispute while maintaining the status quo.

complaint investigative discovery). In the Timing Agreement, Defendants agreed to "not object to a reasonable post-complaint discovery period prior to any trial on the merits" and "not to argue to a court that pre-complaint discovery by the Division should forestall or otherwise limit post-complaint discovery." *Id.* Further, Defendants explicitly acknowledged that the government's investigation was "not sufficient to prepare the Division for a trial on the merits." *Id.*

Consistent with Defendants' waiver, courts have long recognized that a government agency's pre-complaint investigation is not a substitute for, nor should it limit, post-complaint discovery. *See, e.g.*, *United States v. GAF Corp.*, 596 F.2d 10, 14 (2d Cir. 1979) ("It is important to remember that the [Justice] Department's objective at the pre-complaint stage of the investigation is not to 'prove' its case but rather to make an informed decision on whether or not to file a complaint." (quoting H.R. Rep. No. 94-1343 at 26, Hart-Scott-Rodino Antitrust Improvements Act of 1976)); *see also SEC v. Saul*, 133 F.R.D. 115, 118–119 (N.D. Ill. 1990) (rejecting argument "that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case"). The United States' pre-complaint investigation focused on whether to bring an enforcement action and, if so, the scope of the lawsuit; meeting its burden of proof at trial is altogether different. Any suggestion by Defendants that the United States would not be prejudiced by limiting additional discovery in preparation for trial due to its pre-complaint investigation of the proposed acquisition is incorrect, contrary to law, and violative of the parties' agreement.

In tacit recognition that they are precluded by the parties' Timing Agreement from arguing that the government's pre-complaint investigation is a substitute for, or should otherwise limit, post-complaint discovery, Defendants instead serve to paint themselves as victim of government delay. Nothing is further from the truth. Defendants' new desire for speed is sharply contrasted, however, with Visa's conduct during the United States' pre-complaint investigation. During the government's investigation, Visa repeatedly missed production deadlines more generous than the ones it proposes here, flouted its obligations to meet certain production benchmarks, withheld or caused to be withheld critical and responsive documents, certified compliance with the government's Second Request subpoena thirty-six days late, and took seventy-one days to

-38-

schedule and make its executives available for deposition.  *See e.g.* Declaration of Cory B. Leuchten ¶ A-D, G.  Moreover, Defendants' claims that the United States has "sought to slow this litigation at every opportunity" are unfounded.[5]

      If Defendants were truly interested in a speedy resolution of this matter, they would adhere to the rules that help the Court to prepare and the Parties to tailor and focus their advocacy.  Instead, in just the last few weeks, Defendants have: (i) rushed an administrative motion for an expedited case management conference without properly seeking a joint stipulation with the United States as required by Local Rule 7-11(a), forcing Plaintiff to file and the Court to review contested briefing rather than a single joint motion; (ii) in their haste to file the administrative motion, failed to review the Court's posted schedule and standing orders and consequently proposed and briefed a schedule inconsistent with the Court's pretrial requirements with a trial starting on date that the Court is unavailable; (iii) served initial disclosures on the United States that are materially deficient and identify only five Visa executives and zero third parties with "discoverable information…that the disclosing party may use to support its claims or defenses" as required by Rule 26(a); (iv) filed an ADR certification (ECF 51) certifying that Visa's counsel had discussed ADR with counsel for all Parties when, at the time of the certification, the Parties had exchanged early draft case management statements but Defendants had not met and conferred or discussed the issue with lead counsel for the United States as required by ADR Local Rule 3-5 and Local Rule 16-3; (v) filed an Answer that failed to adequately admit or deny allegations or identify any defenses Visa might rely on at trial, making it more difficult for the United States to prepare its case, *see, e.g.*, ECF 50, Defendant Visa's Answer ¶ 9 (referring the Court to documents quoted in the Complaint "in their entirety for a complete and accurate description of their contents" but neither admitting nor denying the allegations contained therein); *id.* at 18 (identifying no defenses but "reserv[ing] the

---

[5] For example, Defendants accuse the United States of delay in agreeing that the Parties had satisfied their Rule 26(f) obligations.  There was no delay.  The United States agreed to Defendants' written request that the parties' December 3 meet and confer could be considered a Rule 26(f) conference within one business day, even though Visa's lead counsel failed to attend the conference as required by Local Rule 16-3.

right to assert and rely upon any defenses that may become available or known to Visa throughout the course of this action . . . ."); (vi) failed to have lead counsel for Visa attend the parties' Rule 26(f) conference, resulting in Defendants repeatedly reneging on agreements the parties had previously reached regarding various case management issues; and (vii) proposed a drastic restructuring of the trial schedule and structure on the eve of this joint statement, ensuring the parties would not be able to present any joint solution to the Court and denying the United States a reasonable opportunity to discuss the merits or logistics of Defendants' proposal.

For the foregoing reasons, the United States respectfully requests this Court set a trial date of September 7, 2021, and adopt the government's interim deadlines set forth below, so as to allow sufficient time for the development of a full, fair, and efficient presentation of the factual and economic evidence necessary for resolution of this important matter by the Court.

## B.   Defendants' Position

Defendants request a trial date of April 26, 2021 (or as soon thereafter as the Court's schedule permits).  As noted in Defendants' Administrative Motion for an Expedited Case Management Conference (ECF 42), this transaction has been pending since January 2020.  DOJ investigated this transaction for ten months and already has a large evidentiary record, including over 1.5 million documents from Defendants, productions from 13 third parties, and 18 days of deposition testimony.  Mergers such as Visa's acquisition of Plaid are time-critical, and, therefore, merger challenges move at a substantially faster pace to bench trial than other forms of civil litigation.  The cases DOJ cites in support of longer schedules are inapposite, as they do not involve a pending transaction.  This includes *United States v. Bazaarvoice*, the only "merger" case cited by DOJ in support of their extended trial timing, which involved a consummated merger where (1) there was no time pressure, as there is here, of delayed closing of a transaction, and (2) the parties jointly requested a trial start date that was 194 days after the complaint was filed, *see* Joint Case Manage Statement at 21, *U.S. v. Bazaarvoice*, No. 13-cv-00133 (ECF 26)— nearly two months shorter than DOJ's proposed timing.  Time to trial for merger cases involving unconsummated mergers such as this one are typically tried on a timeline similar to the schedule

proposed by Defendants.  *See, e.g.*, *United States v. AT&T, Inc.*, No. 17-cv-02511-RJL (D.D.C. 2017) (122 days from complaint to trial); *United States v. Anthem, Inc.*, No. 16-cv-01493 (ABJ) (D.D.C. 2017) (123 days from complaint to trial).  Notably, the time to trial in *Bazaarvoice* is nearly two months shorter than DOJ's proposed timing.  This expedited timing for litigation involving unconsummated mergers avoids the harm that would accrue to the merging parties, and the market, were a pro-competitive merger to be delayed.  Plaid, in particular, continues to suffer from DOJ's proposed delay in resolving this matter.  A small company subject to a proposed-but-challenged merger, Plaid is in a state of limbo.  As detailed in the attached confidential declarations, the uncertainty of Plaid's future status negatively affects Plaid's business operations and every week of further delay will cause Plaid irreparable harm.  *See* Exhibits B and C.  Importantly, however, the entire market and consumers suffer from delay in resolving this uncertainty in the marketplace.

The Timing Agreement dated May 15, 2020 between Defendants and DOJ does not foreclose Defendants' position on schedule.  Despite such timing agreements and their associated discovery provisions being imposed on the merging parties, DOJ merger trials are routinely expedited as Defendants propose here (and as noted in Defendants' Administrative Motion for an Expedited Case Management Conference). Contrary to DOJ's contention, Defendants do not seek to entirely preclude or "limit" post-complaint discovery by DOJ based on its pre-complaint discovery.  Defendants' position is only that such pre-complaint discovery should be taken into account in determining the extent of post-complaint discovery and the corresponding schedule.

It should be noted that timing agreements like the one executed here are essentially imposed on merging parties by DOJ and designed to extract a substantial amount of review time beyond what the pre-merger review statute provides in "exchange" for DOJ's agreement not to impose draconian document and data requests during its investigation.  DOJ has publicly released a model timing agreement with boilerplate language (including the provision cited by

DOJ here) that is essentially non-negotiable.[6]   And that was expressly the position the DOJ took in the pre-complaint investigation in this case.  In any case, it was not the intention of the parties for the Timing Agreement to apply to a monopolization litigation.

Moreover, DOJ's characterization of Visa's compliance with the Timing Agreement's production deadlines is incorrect.  The Timing Agreement did not set specific dates for production deadlines, but merely prohibited Defendants from certifying compliance with the Second Request issued by DOJ until a certain number of days after those deadlines were met. Visa complied with each of these provisions.  During the negotiation of the Timing Agreement, it was DOJ, not Defendants, that insisted on a longer number of days before Defendants could certify compliance.  And it was DOJ's delay in providing specific database requests to Visa that, when combined with the overlapping web of other deadlines in the Timing Agreement and Second Request, caused Visa to miss the earlier *target* deadline for compliance that it had set for itself.  Defendants had no incentive for DOJ's investigation of this matter to last a day longer than absolutely necessary, and DOJ's suggestion that Visa engaged in delay to that end is not credible.  Visa is prepared to submit counter-declarations to the Court if useful but was unable to do so since DOJ's declarations were not disclosed to Defendants until 2:00 PM Eastern Standard Time for a joint statement to be filed no later than 5:00 EST by agreement of the parties.

DOJ's assertion of a Section 2 claim challenging the same conduct (the merger) in the same relevant market, and seeking the same relief (an injunction against the merger) is indisputably aimed at delaying adjudication of this case on the merits.  By injecting a novel Sherman Act Section 2 claim into a traditional merger challenge, DOJ seeks to complicate the issues unnecessarily and increase the discovery burden on the parties.  For example, DOJ insists that its inclusion of a Section 2 claim requires months more of discovery than if it had simply brought this case under Section 7.  Even as DOJ asserts it needs a lengthy schedule, DOJ staff

---

[6]     *See* U.S. Dep't Of Justice, Antitrust Div., Model Timing Agreement (Nov. 2018), https://www.justice.gov/atr/page/file/1111336/download.

1   have slowed the start of litigation.   DOJ has in fact sought to slow this litigation at every

2   opportunity, in an attempt to use process to cause delay that would so decimate the benefits of

3   the transaction that the Defendants will be forced to abandon.   DOJ's characterization of the

4   Parties' interactions notwithstanding, Defendants have complied with the pre-trial deadlines

5   required by fast-moving merger litigation in due course and have tried to keep the litigation

6   moving by working to meet proposed deadlines not yet ordered by the Court.   This is an efficient

7   way to proceed in advance of the Case Management Conference.

8        Trying a Section 2 case here would not only be time-consuming; it is entirely

9   unnecessary.   DOJ can get the full relief it is seeking—preventing Visa from acquiring Plaid—

10  under the traditional merger statute, Section 7 of Clayton Act.   DOJ seems to believe that Section

11  2 reaches acquisitions that Section 7 does not, but the Supreme Court has held expressly the

12  opposite.   *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962).   Section 7 was enacted at least

13  in part due to the failings of Section 2 to prohibit a broad range of mergers, and the Supreme

14  Court therefore recognized that the standards of the Sherman Act are more demanding than those

15  of the Clayton Act. See id. at 328-29 ("[T]he tests for measuring the legality of any particular

16  economic arrangement under the Clayton Act are to be less stringent than those used in applying

17  the Sherman Act.").

18       As the parties have been meeting and conferring with DOJ but not closing the gap on

19  length of schedule, scope of discovery, or length of trial, Defendants have considered additional

20  ways to narrow the issues for trial.   Defendants proposed the following outcome-dispositive

21  question for binding arbitration:   Whether Plaid is uniquely positioned to become a significant

22  competitor to Visa's online debit products.   The answer to this question would fully resolve the

23  issues in this litigation on the basis of Section 7.   As discussed above, Defendants are prepared to

24  file a 12(c) motion seeking dismissal of DOJ's insufficiently-pled Section 2 claim only if the

25  court finds that determination would increase efficiency and speed of resolution.   A form of that

26  motion is attached as Exhibit A, which the Defendants will file in accordance with the Court's

27  procedures if Defendants proceed with the motion.   After discovery and a streamlined trial on the

28

-43-

merits, should the Court find that the DOJ met its burden on this narrowed question, judgment would be entered for the United States on its Section 7 claim. This narrowing of issues is consistent with the approach adopted in the last potential competition case tried by the government, *FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015). In that case, the court considered the narrow issue of the target's potential entry into the market and held that the government failed to prove a reasonable probability of entry within a reasonable period of time. Here, to the extent DOJ is unable to establish that Plaid would have entered the market within a reasonable period of time for purposes of proving a Section 7 claim, its entire case fails. Whether one calls this nascent or potential competition does not matter. When the theory of a plaintiff's challenge to a merger is based on the elimination of competition that does not exist today but would allegedly exist only in the future, the plaintiff must demonstrate that there is something unique (the phrase DOJe uses in its Complaint) about the competitor being acquired. This does not mean the acquired firm must be shown to be the only potential entrant, but it does mean that the firm must be one of a few. In fact, that is hornbook law. ABA Antitrust Section, Antitrust Developments 391 (8th ed. 2017) (A "prerequisite recognized by the courts is that there be few equivalent potential entrants, because otherwise elimination of the acquiring firm would not affect competition."); *id.* at 391 n.296, citing, e.g., *Mercantile Tex. Corp. v. Bd. of Governors*, 638 F.2d 1255, 1267 (5th Cir. 1981); *FTC v. Atl. Richfield Co.*, 549 F.2d 289, 300 (4th Cir. 1977); *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 864-65 & n.30 (2d Cir. 1974); *United States v. First Nat'l State Bancorp.*, 499 F. Supp. 793, 814 (D.N.J. 1980); *United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729, 771-72 (D. Md. 1976) (concluding prerequisite not satisfied); *U.S. v. Hughes Tool Co.*, 415 F. Supp. 637, 646 (C.D. Cal. 1976) (six potential entrants); *United Nuclear Corp. v. Combustion Eng'g*, 302 F. Supp. 539, 557 (E.D. Pa. 1969); *In the Matter of B.A.T. Indus., Ltd.*, 104 F.T.C. 852, 921 (Dec. 17, 1984); *In the Matter of Champion Spark Plug Co.*, 103 F.T.C. 546, 631 (June 20, 1984); *In the Matter of Tenneco, Inc.*, 98 F.T.C. 464, 577 (Sept. 23, 1981) (noting that for the loss of the future entrant to be "significant," there must be few firms similarly capable of entry), *rev'd on other grounds*, 689 F.2d 346 (2d Cir. 1982) (reversing FTC finding that acquired company was

-44-

either actual or perceived market entrant); *Matter of Beatrice Foods Co.*, 86 F.T.C. 1, 63 (July 1, 1975), aff'd, 540 F.2d 303, 312 (7th Cir. 1976); see also *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 580-81 (1967). The two cases cited by the plaintiff are not contrary. *Microsoft* did not involve an acquisition, just exclusionary conduct against unique threats, and *Polypore* involved a present competitor (and a merger to monopoly), and a context where the one other potential entrant identified by the defendants was specifically found to be unlikely to enter. *Polypore Int'l, Inc.,* 686 F.3d at 1218. In the recent *Steris* case, moreover, the government—there the FTC—expressly acknowledged that an entrant must be "one of but a few likely entrants." Memorandum In Support Of Plaintiff Federal Trade Commission's Motion For Temporary Restraining Order And Preliminary Injunction 6 n.40, *FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015), available at https://www.ftc.gov/system/files/documents/cases/150504ecfmemo.pdf; *see also id.*, Reply Memorandum at 40 ("Having shown that Synergy's entry with x-ray would have a substantial likelihood of producing deconcentration and other procompetitive benefits, the remaining question is whether Synergy is 'one of but a few likely entrants into the market, *Siemens*, 621 F.2d at 509; *accord* Areeda & Hovenkamp, Antitrust Law, P 1121b ("The number of equally likely new entrants, including the outside firm, does not exceed three (or, at most, four)').", available at https://www.ftc.gov/system/files/documents/cases/150814ftcsterisbriefreply.pdf.

An expedited schedule on the Section 7 claim would save taxpayers and the parties unnecessary expense and conserve judicial resources. If Defendants are successful, they will be able to stanch depletion of the value of the transaction and more quickly bring the procompetitive benefits of the transaction to bear. If instead Plaintiff is successful, the merger will be enjoined on an expedited schedule and DOJ can re-focus its resources on other matters. Both Plaintiff and Defendants would benefit from the ability to focus on a narrower set of key issues.

Defendants and DOJ have been discussing the issues inherent to DOJ's Section 2 claim since October 2020, when DOJ first proposed this novel claim during its merger investigation. Just nine days ago, Defendants proposed resolving the DOJ's claims through binding arbitration

on the same narrow question, and so the concept is not new to the discussion between the parties. Plaintiff declined this approach without explanation.  On December 9, Defendants re-raised this same proposal for narrowing the issues for trial in a continuation of months-long discussions around Defendants' views regarding the weakness of DOJ's Section 2 claims, nevertheless DOJ has informed Defendants that it is not yet able to prepare a substantive response.  There is no basis for postponing the Case Management Conference to meet and confer over an issue that the parties have been discussing for two months.  Defendants have asked that the DOJ continue to engage in discussions in the hope that the parties may reach an agreement on narrowing the issues to be tried and update the Court in advance of the December 18 conference.

**C.    Proposed Schedule.**

The Parties propose the following schedules:

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Fact discovery begins | On the Court's entry of the proposed Case Management Order | December 3, 2020 (the date of the final meet and confer on Rule 26(f) issues) |
| Answers to Complaint due | N/A | November 27, 2020 |
| The United States serves Rule 26(a)(1) Initial Disclosures | December 17, 2020 | December 17, 2020 |
| Defendant Visa to supplement Rule 26(a)(1) Initial Disclosures | 3 days after receipt of Plaintiffs' Investigative File | 3 days after receipt of Plaintiffs' Investigative File |

-46-

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Parties exchange preliminary trial witness lists | January 29, 2020 | December 28, 2020 |
| Parties exchange final trial witness lists | April 9, 2021 | January 26, 2021 |
| Close of fact discovery | April 30, 2021 | January 29, 2021 |
| Close of Supplemental Discovery | May 14, 2021 | February 5, 2021 |
| Parties serve Rule 26(a)(2)(B) initial expert witness disclosures that contain complete statements of all opinions the witness will express and the basis and reasons for those opinions | May 21, 2021 | February 8, 2021 |
| Parties serve Rule 26(a)(2)(D)(ii) expert witness disclosures that are intended solely to contradict or rebut evidence on the same subject matter identified by another Party under Rule 26(a)(2)(B) | June 17, 2021 | February 19, 2021 |
| Parties exchange exhibit lists and, opening deposition designations, and all interrogatories and requests for admission a Party intends to use in its case-in-chief. | July 1, 2021 | February 26, 2021 |
| Each Party informs each non-party of all documents produced by that non-party that are on that Party's exhibit list and all depositions of that non-party that have been designated by any Party. | July 9, 2021 | February 26, 2021 |

JOINT CASE MANAGEMENT STATEMENT
Case No. 4:20-cv-07810-JSW

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Parties serve supplemental/rebuttal expert witness disclosures that are intended solely to contradict or rebut evidence on the same subject matter identified by another Party under Rule 26(a)(2)(D)(ii) | July 15, 2021 | February 26, 2021 |
| Each side exchanges its objections to the other side's exhibits, interrogatories, requests for admission, and opening deposition designations and its deposition counter-designations | July 16, 2021 | March 5, 2021 |
| Non-parties provide notice whether they object to the potential public disclosure at trial of any non-party documents and deposition designations included on the parties' exhibit lists, explain the basis for any such objections, and propose redactions where possible | July 23, 2021 | March 5, 2021 |
| Close of expert discovery | July 28, 2021 | March 19, 2021 |
| Parties and non-parties meet and confer regarding confidentiality of non-party documents on trial exhibit lists and non-party depositions | July 30, 2021 | March 26, 2021 |
| Parties meet and confer regarding admissibility of trial exhibits, interrogatories, requests for admission, and deposition designations | July 30, 2021 | March 26, 2021 |

JOINT CASE MANAGEMENT STATEMENT
Case No. 4:20-cv-07810-JSW

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Parties meet and confer regarding disputes about confidentiality of Party documents on trial exhibit lists | July 30, 2021 | March 26, 2021 |
| Motions *in limine* to be exchanged | July 30, 2021 | March 20, 2021 |
| Oppositions to motions *in limine* to be exchanged | August 10, 2021 | March 30, 2021 |
| *Motions in limine* and oppositions to be filed | August 16, 2021 | April 5, 2021 |
| Joint submission regarding disputes about admissibility of trial exhibits, deposition designations, interrogatories and requests for admission | August 16, 2021 | April 5, 2021 |
| Joint submission regarding disputes about confidentiality of Party documents on trial exhibit lists to be filed | August 16, 2021 | April 5, 2021 |
| Joint submissions regarding disputes about confidentiality of each non-party's documents on trial exhibit lists and non-party depositions to be filed | August 16, 2021 | April 5, 2021 |
| Joint Proposed Final Conference Order to be filed | August 16, 2021 | April 5, 2021 |
| Proposed Findings of Fact and Conclusions of Law to be filed | August 16, 2021 | April 5, 2021 |
| Pretrial briefs to be filed | August 16, 2021 | April 5, 2021 |

-49-

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Final pretrial conference | August 30, 2021, or at the Court's convenience thereafter | April 19 , 2021 (or as soon thereafter as the Court's schedule permits) |
| Parties submit copies of final trial exhibits to Court | September 2, 2021 | April 23, 2021 |
| Trial begins | September 7, 2021, or at the Court's convenience thereafter | April 26, 2021 (or as soon thereafter as the Court's schedule permits) |
| Post-trial briefs to be filed | 7 business days after trial concludes | 7 business days after the conclusion of trial |

### B.   Witness Lists.

The United States is limited to 30 persons on its preliminary trial witness list, and the Defendants collectively are limited to 30 persons on their preliminary trial witness list. The preliminary witness lists must include fact witnesses, and must provide the address, telephone number, and email address of each witness. The final witness lists must also include expert witnesses. The United States is limited to 25 persons on its final trial witness list, and the Defendants collectively are limited to 25 persons on their final trial witness list.

-50-

Each side's final trial witness list may identify no more than 5 witnesses that were not identified on that side's preliminary trial witness list. Despite the limitation on the number of depositions that each side may take, each side shall have the right to depose any witness on the opposing side's preliminary or final witness list if that witness has not already been deposed in this litigation, even if the limitation on depositions is exceeded. The final trial witness lists must comply with Federal Rule of Civil Procedure 26(a)(3)(A)(i)–(ii), include both fact and expert witnesses, and must include a brief summary of the subjects about which any expert witnesses will testify.

In preparing preliminary trial witness lists and final trial witness lists, the Parties must make good-faith attempts to identify the witnesses (including expert witnesses in only the final trial witness list) whom they expect that they may present as live witnesses at trial (other than solely for impeachment). No Party may offer into evidence at trial any portion of a person's deposition testimony unless that person was identified on that Party's final trial witness list. No Party may call a person to testify as a live witness at trial (other than solely for impeachment) unless that person was identified on that Party's final trial witness list.

### C.    Demonstrative Exhibits.

The Parties must serve demonstrative exhibits on all counsel of record at least 24 hours before any such exhibit may be introduced (or otherwise used) at trial, except that (a) demonstrative exhibits to be introduced (or otherwise used) in connection with the rebuttal testimony of an expert witness for Plaintiff may be served fewer than 24 hours before such exhibits may be introduced (or otherwise used) if such rebuttal testimony begins fewer than 48 hours after Defendants rest their case; (b) slides used during closing arguments served less than 24 hours in advance may be introduced (or otherwise used) if closing arguments begin fewer than 48 hours after any rebuttal testimony is concluded. The following demonstratives need not

be pre-disclosed to the opposing Party: (a) demonstrative exhibits used in cross examination of any witness; (b) demonstrative exhibits used by the United States in examination of any current or former employee, executive, board member or agent of either Defendant; and (c) demonstrative exhibits created in court during the witness's examination.  Demonstrative exhibits representing data must rely only on data that has been produced to the opposing Party by the close of fact discovery or is publicly available.

### D.        Evidence Concerning Remedy.

#### 1.        *Plaintiff's Position*

*Evidence related to a Defendant's attempt to address the United States' concerns about the Planned Transaction, whether by agreeing to divest or license assets or by making any other agreement, offer, or commitment, will be excluded under Federal Rule of Evidence 403 as unfairly prejudicial to the United States, unless Defendants provide a copy of the agreement, offer, or commitment to the United States forty-five days before the end of fact discovery.*

Defendants have not proposed any remedy to address the competitive concerns with the Planned Transaction, and the United States is skeptical that any remedy would adequately mitigate its anticompetitive effects.  Defendants should not be allowed to introduce new fact issues on the eve of trial.  Should Defendants propose such a remedy, the United States would require adequate time to investigate and market test the proposal – including its impact on consumers – before trial.  Accordingly, evidence related to any Defendant's attempt to address the United States' concerns about the Planned Transaction, whether by agreeing to divest or license assets or by making any other agreement, offer, or commitment, should be excluded under Federal Rule of Evidence 403 as unfairly prejudicial to the United States, unless Defendants provide a copy of the agreement, offer, or commitment to the United States at least forty-five days before the end of fact discovery.

### 2.   *Defendants' Position*

*Evidence related to a Defendant's attempt to address the United States' concerns about the Planned Transaction, whether by agreeing to divest or license assets or by making any other agreement, offer, or commitment, may be offered at any time.*

There is no need to impose a deadline on offers of remedies.  Efforts toward settlement should be encouraged throughout litigation and, should Plaintiff reject a proposed remedy during litigation, Defendants should be permitted to present the same proposal to the Court as evidence in consideration of Plaintiff's claims.  The Court has discretion to consider timing in determining whether the evidence regarding the proposed remedy should be admissible at trial.

## XVIII. TRIAL LENGTH

### 1.   **Plaintiff's Position**

The United States tentatively estimates that the bench trial in this matter will take a cumulative 100 hours.

### 2.   **Defendants' Position**

Defendants estimate that the bench trial in this matter will take 25 hours per side.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Defendant Visa filed its "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 on November 9, 2020.  Defendant Plaid filed its "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 on November 10, 2020.

As of this date, other than the named parties, there is no such person for Visa to report.

As of this date, other than the named parties and their shareholders, there is no such person for Plaid to report.

## XX.   PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

XXI.   **OTHER MATTERS**

    **A.**     **Completion of Planned Transaction.**

    Defendants have agreed that they will not close, consummate, or otherwise complete the Planned Transaction until 12:01 a.m. on the tenth day following the entry of the judgment by the Court, and only if the Court enters an appealable order that does not prohibit consummation of the transaction. For purposes of this Order, "Planned Transaction" means Visa's planned acquisition of Plaid.

    **B.**     **Service of Pleadings and Discovery on Other Parties.**

    Service of all pleadings, discovery requests (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45), expert disclosures, and delivery of all correspondence in this matter must be made by ECF or email, except when the volume of attachments requires overnight delivery of the attachments or personal delivery, to the following individuals designated by each Party:

        <u>**For Plaintiff United States of America**</u>:
        John R. Read (john.read@usdoj.gov)
        Cory Brader Leuchten (cory.leuchten@usdoj.gov)
        Meagan K. Bellshaw (meagan.bellshaw@usdoj.gov)
        Lisa Scanlon (lisa.scanlon@usdoj.gov)
        United State Department of Justice
        450 Fifth Street, NW, Suite 4000
        Washington, D.C. 20530
        Tel: (202) 598-2307

        <u>**For Defendant Visa Inc.**</u>:
        Steven C. Sunshine (steve.sunshine@skadden.com)
        Skadden, Arps, Slate, Meagher & Flom LLP
        1440 New York Avenue, NW
        Washington, DC 20005
        Tel: (202) 371-7000

        <u>**For Defendant Plaid Inc.**</u>:
        Scott A. Sher (ssher@wsgr.com)
        Wilson Sonsini Goodrich & Rosati
        1700 K Street NW
        Fifth Floor

Washington, DC 20006
Tel: (202) 973-8800

For purposes of calculating discovery response times under the Federal Rules of Civil Procedure, electronic delivery at the time the email was received will be treated in the same manner as hand delivery at that time. However, for any service other than service of court filings, email service that is delivered after 5:00 p.m. Pacific Time will be treated as if it was served the following business day.

**C.      Nationwide Service of Trial Subpoenas.**

To assist the Parties in planning discovery, and in view of the geographic dispersion of potential witnesses in this action outside this District, the Parties are permitted, under 15 U.S.C. § 23, to issue trial subpoenas that may run into any other federal district requiring witnesses to attend this Court. The availability of nationwide service of process, however, does not make a witness who is otherwise "unavailable" for purposes of Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 available under those rules or otherwise affect the admissibility at trial of a deposition of a witness.

**D.      Modification of Scheduling and Case Management Order.**

Modifications of the rights and responsibilities of the Parties under this Order may be made by mutual agreement of the Parties, provided any such modification has no effect on the schedule for pretrial filings or trial dates. Otherwise, any Party may seek modification of this Order for good cause.

Dated: December 11, 2020                    _____/s/ John R. Read_____
                                            JOHN R. READ
                                            Attorney
                                            U.S. Department of Justice
                                            Antitrust Division
                                            450 Fifth Street N.W., Suite 4000
                                            Washington, D.C. 20530
                                            Tel.: (202) 307-0468
                                            Email: john.read@usdoj.gov
                                            *Attorneys for Plaintiff United States*


Dated: December 11, 2020                    _____/s/ Steven C. Sunshine_____
                                            STEVEN C. SUNSHINE
                                            Skadden, Arps, Slate, Meagher & Flom LLP
                                            1440 New York Avenue, NW
                                            Washington, DC 20005
                                            Tel: (202) 371-7000
                                            Email: steve.sunshine@skadden.com
                                            *Attorneys for Defendant Visa Inc.*


Dated: December 11, 2020                    _____/s/ Jonathan M. Jacobson_____
                                            JONATHAN M. JACOBSON
                                            Wilson Sonsini Goodrich & Rosati
                                            1301 Avenue of the Americas, 40th Floor
                                            New York, NY 10019
                                            Tel: (212) 497-7758
                                            Email: jjacobson@wsgr.com
                                            *Attorneys for Defendant Plaid Inc.*

JOINT CASE MANAGEMENT STATEMENT
Case No. 4:20-cv-07810-JSW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTORNEY ATTESTATION**

I, Meagan K. Bellshaw, am the ECF user whose identification and password are being used to file the JOINT CASE MANAGEMENT STATEMENT AND DISCOVERY PLAN. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

/s/ *Meagan K. Bellshaw*
Meagan K. Bellshaw

JOINT CASE MANAGEMENT STATEMENT
Case No. 4:20-cv-07810-JSW