| | |
|---|---|
| Jack P. DiCanio (SBN 138782)<br>SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP<br>525 University Avenue, Suite 1400<br>Palo Alto, California 94301<br>Telephone: (650) 470-4500<br>Facsimile: (650) 470-4570<br>Email: Jack.DiCanio@skadden.com | Jonathan M. Jacobson, SBN 1350495<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, New York 10019<br>Telephone: (212) 497-7758<br>Facsimile: (212) 999-5899<br>Email: jjacobson@wsgr.com |
| Steven C. Sunshine (*pro hac vice*)<br>SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP<br>1440 New York, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 371-7000<br>Facsimile (202) 393-5760<br>Email: steven.sunshine@skadden.com | Justina K. Sessions, SBN 270914<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>One Market Plaza, Spear Tower, Suite 3300<br>San Francisco, California 94105<br>Telephone: (415) 947-2000<br>Facsimile: (415) 947-2099<br>Email: jsessions@wsgr.com |
| *Attorneys for Defendant*<br>VISA INC.<br><br>[Additional counsel listed on signature page] | Scott A. Sher, SBN 190053<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1700 K Street NW, Fifth Floor<br>Washington, DC 20006<br>Telephone: (202) 973-8800<br>Facsimile: (202) 973-8899<br>Email: ssher@wsgr.com<br><br>*Attorneys for Defendant*<br>PLAID INC. |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>  v.<br><br>VISA INC. and PLAID INC.,<br><br>            Defendants. | CASE NO.: 4:20-cv-7810-JSW<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:<br>Time:<br>Courtroom:   5, 2d Floor<br>Before:        Hon. Jeffrey S. White |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................... ii

Background ..............................................................................................................................1

Argument .................................................................................................................................2

    A. Judgment on the Pleadings Is Warranted When the Movant Is Entitled to Judgment as a Matter of Law .................................................................................2

    B. Judgment on the Pleadings is Warranted on DOJ's Sherman Act Section 2 Claim .......................................................................................................................3

    C. Dismissal of DOJ's Section 2 Claim will Streamline this Litigation ......................8

Conclusion ................................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*BOC International Ltd. v. FTC*,
557 F.2d 24 (2d Cir. 1977) .......... 4

*Brown Shoe Co. v. United States*,
370 U.S. 274 (1962) .......... 3, 4, 5

*Cafasso v. General Dynamics C4 Systems, Inc.*,
637 F.3d 1047 (9th Cir. 2011) .......... 3

*Credit Bureau Reports, Inc. v. Retail Credit Co.*,
358 F. Supp. 780 (S.D. Tex. 1971), *aff'd*, 476 F.2d 989 (5th Cir. 1973) .......... 4

*Epic Games, Inc. v. Apple Inc.*,
No. 4:20-cv-05640-YGR, 2020 WL 5993222 (N.D. Cal. Oct. 9, 2020) .......... 3, 7

*Fleming v. Pickard*,
581 F.3d 922 (9th Cir. 2009) .......... 2

*Food & Drug Administration v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) .......... 4

*FTC v. Atlantic Richfield Co.*,
549 F.2d 289 (4th Cir. 1977) .......... 4

*FTC v. Steris Corp.*,
133 F. Supp. 3d 962 (N.D. Ohio 2015) .......... 4

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .......... 3, 7

*Gadda v. State Bar of California*,
511 F.3d 933 (9th Cir. 2007) .......... 9

*Hawaii v. Trump*,
859 F.3d 741 (9th Cir. 2017), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017) .......... 4

*International Telephone & Telegraph Corp. v. American Telephone & Telegraph Co.*,
481 F. Supp. 399 (S.D.N.Y. 1979) .......... 4

*Oahu Gas Service Inc. v. Pacific Resources Inc.*,
838 F.2d 360 (9th Cir. 1988) .......... 8

*Rambus Inc. v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008) .................................................................................................. 7

*United States v. Black & Decker Manufacturing Co.*,
    430 F. Supp. 729 (D. Md. 1976) .............................................................................................. 4

*United States v. Crocker-Anglo National Bank*,
    223 F. Supp. 849 (N.D. Cal. 1963) .......................................................................................... 4

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ............................................................................................................ 3, 8

*United States v. H & R Block, Inc.*,
    833 F. Supp. 2d 36 (D.D.C. 2011) ........................................................................................... 8

*United States v. Marine Bancorporation, Inc.*,
    418 U.S. 602 (1974) ................................................................................................................ 8

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................................................... 6, 7

*United States v. Siemens Corp.*,
    621 F.2d 499 (2d Cir. 1980) .................................................................................................... 4

*United States v. US Airways Group*,
    979 F. Supp. 2d 33 (D.D.C. 2013) ........................................................................................... 8

**STATUTES**

15 U.S.C. § 2 ................................................................................................................................. 1, 2

15 U.S.C. § 18 ............................................................................................................................ 1, 2, 3

15 U.S.C. § 25 .................................................................................................................................. 8

**RULES**

Rule 12(c) of the Federal Rules of Civil Procedure ......................................................................... 2

**OTHER AUTHORITIES**

Douglas H. Ginsburg & Koren W. Wong-Ervin, *Challenging Consummated Mergers Under
    Section 2*, Competition Policy International, May 25, 2020 ........................................... 5, 7, 8

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: an Analysis of Antitrust Principles
    and Their Application* (5th ed. 2020) .................................................................................. 5, 8

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, defendants Visa Inc. and Plaid Inc. move this Court for judgment on the pleadings, dismissing plaintiff's claim pursuant to Sherman Act Section 2, 15 U.S.C. § 2, with prejudice.

The Antitrust Division of the United States Department of Justice ("DOJ") is seeking to block Visa's time-critical acquisition of Plaid, a deal that was signed up in January 2020, and one that the DOJ investigated for nearly ten months. DOJ concedes that Plaid *is not a competitor* of Visa's today; instead, DOJ claims that the proposed acquisition threatens competition because Plaid supposedly someday hopes to introduce a new type of payment service (not currently available in the United States) to compete against Visa in an alleged market for "online debit transactions." For decades, "potential competition" theories like this one have been evaluated under Section 7 of the Clayton Act (15 U.S.C. § 18)—the statute specifically designed to address mergers—and have found almost no traction in the courts. Likely aware that potential competition cases are extremely difficult to win, DOJ has tacked on a Section 2 Sherman Act claim in the apparent hope of avoiding unfavorable Section 7 precedent.

The Court should dismiss DOJ's adventurous and incorrect Section 2 claim and allow this case to proceed expeditiously as a traditional Section 7 case. DOJ should not be permitted to invoke its flawed Section 2 claim to broaden discovery and delay determination of this case on the merits well past the pace of a typical merger challenge. There is no prejudice to DOJ because the only relief it seeks—blocking the proposed acquisition—is subject to the less stringent standards of Section 7 of the Clayton Act, which DOJ has also invoked.

## BACKGROUND

On November 5, 2020, DOJ filed this action challenging Visa's proposed acquisition of Plaid. (ECF 1, Complaint ("Compl.").) The complaint admits that Visa and Plaid do not currently compete. (*Id.* ¶ 8.) Instead, DOJ asserts that the acquisition would eliminate a *potential* competitive threat in a purported market for online debit transactions, in alleged violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, 15 U.S.C. § 2.
1

(*Id.* ¶¶ 76-77.)[1]  Both of DOJ's claims challenge the very same conduct—the proposed acquisition—in the same putative relevant market and seek the very same relief—a permanent injunction against the transaction.  (*Id.* ¶¶ 76-79.)

DOJ alleges that Visa is a monopolist in a purported online debit market.  (*Id.* ¶ 68.)  Despite claiming that market is characterized by "significant barriers to entry and expansion" (*id.* ¶ 4), DOJ contends that Plaid is uniquely positioned to enter and challenge Visa by developing a new "pay-by-bank debit service" that does not currently exist in the United States.  (*Id.* ¶¶ 33-34.)  The complaint states that Plaid has built significant connections with financial institutions and customers through its financial data aggregation platform (*id.* ¶¶ 7, 21), and that Plaid "plans to build on the success of its current services" by "leverag[ing] [its existing] technology" to "creat[e] an 'end-to-end payments network.'"  (*Id.* ¶¶ 8, 40.)  The complaint notes that Plaid has unspecified "plans" to enter the money-movement business by the end of 2021 and is currently piloting with customers certain of its current products (none of which is a debit service), but fails to provide any other facts regarding Plaid's efforts or ability to develop an "online pay-by-bank debit service [that] would compete against Visa's online debit services."  (*Id.* ¶¶ 10, 40.)

## ARGUMENT

### A. *Judgment on the Pleadings Is Warranted When the Movant Is Entitled to Judgment as a Matter of Law*

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

"Although [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009),] establishes the standard for deciding a

---

[1] Section 7 of the Clayton Act prohibits mergers, acquisitions, and certain joint ventures where the effect "may be substantially to lessen competition, or to tend to create a monopoly" in any line of commerce or activity affecting commerce in any part of the United States.  15 U.S.C. § 18.  Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 2.

Rule 12(b)(6) motion, . . . Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted).  Thus, for purposes of a 12(c) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Although the court must construe all allegations of material fact in the light most favorable to the plaintiff, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted).

### B. *Judgment on the Pleadings is Warranted on DOJ's Sherman Act Section 2 Claim*

DOJ's Section 2 claim fails as a matter of law.  Section 2 of the Sherman Act requires DOJ to prove (i) the possession of monopoly power in the relevant market; (ii) the willful acquisition or maintenance of that power (also known as "exclusionary conduct"); and (iii) causal antitrust injury. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020); *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR, 2020 WL 5993222, at *9 (N.D. Cal. Oct. 9, 2020).  DOJ has thus far not identified a single case, and defendants are aware of none, where a court has found that the acquisition of a potential or nascent competitor constitutes exclusionary conduct for purposes of Section 2.

Acquisitions of potential or nascent competitors are typically evaluated under Section 7 of the Clayton Act, which prohibits acquisitions the effect of which "may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  Section 7 was enacted at least in part due to the failings of Section 2 to prohibit a broad range of conduct,[2] and the Supreme Court

---

[2] *See Brown Shoe Co. v. United States*, 370 U.S. 294, 318 n.33 (1962) ("Numerous other statements by Congressmen and Senators and by representatives of the Federal Trade Commission, the Department of Justice and the President's Council of Economic Advisors were made to the

recognized decades ago that the standards of the Sherman Act are more demanding than those of the Clayton Act. *See Brown Shoe Co.*, 370 U.S. at 328-29 ("[T]he tests for measuring the legality of any particular economic arrangement under the Clayton Act are to be less stringent than those used in applying the Sherman Act.").[3] As a matter of statutory construction, the prohibitions of general statutes such as Section 2 must be viewed in the context of subsequently-enacted specific statutes (here, Section 7).[4] Thus, DOJ cannot use Section 2 to circumvent the elements of Section 7 designed to regulate specific conduct.

DOJ's motivation for invoking Section 2 to circumvent Section 7 here is clear: there exists a body of Section 7 case law unfavorable to DOJ that expressly addresses acquisitions of potential competitors, including *FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015), a government loss in the only actual potential competition case to be tried in nearly 40 years.[5] In contrast, to

---

Congress suggesting that a standard of illegality stricter than that imposed by the Sherman Act was needed.").

[3] *See also Int'l Tel. & Tel. Corp. v. Am. Tel. & Tel. Co.*, 481 F. Supp. 399, 404 (S.D.N.Y. 1979) ("[S]ection 7 has been interpreted to proscribe a broader range of conduct than that forbidden by the Sherman Act. . . . Since the market foreclosure in this case does not even approach the level required under the Clayton Act, it is clearly De minimis under the more stringent standard of the Sherman Act."); *Credit Bureau Reps., Inc. v. Retail Credit Co.*, 358 F. Supp. 780, 794 (S.D. Tex. 1971) ("The elements of proof in establishing Section 7 violations are somewhat less stringent than proving monopolization under Section 2 of the Sherman Act."), *aff'd*, 476 F.2d 989 (5th Cir. 1973); *United States v. Crocker-Anglo Nat'l Bank*, 223 F. Supp. 849, 859 (N.D. Cal. 1963) ("Since the merger does not violate the Clayton Act, the possibility that it might be held to violate the more stringent standards of the Sherman Act seems most unlikely.").

[4] *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("The 'classic judicial task of reconciling many laws enacted over time, and getting them to "make sense" in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.' This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand." (citation omitted)); *Hawaii v. Trump*, 859 F.3d 741, 781 (9th Cir. 2017) (holding "well-settled interpretive canons" do not allow for a "'narrow, precise, and specific' statutory provision" to be overridden by a provision "'covering a more generalized spectrum' of issues" (citation omitted)), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017).

[5] *See also United States v. Siemens Corp.*, 621 F.2d 499, 507 (2d Cir. 1980) (holding government failed to prove a reasonable probability of entry into the market); *FTC v. Atl. Richfield Co.*, 549 F.2d 289, 296 (4th Cir. 1977) (holding plaintiff failed to establish reasonable probability of entry when putative entrant had shown "continuing interest" in entering the industry); *BOC Int'l Ltd. v. FTC*, 557 F.2d 24, 28 (2d Cir. 1977) (rejecting Commission finding that there was a "reasonable probability" of eventual entry as unacceptably speculative); *United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729, 758 (D. Md. 1976) (holding government failed to prove potential competition claim when defendant lacked "the expertise in gasoline technology necessary for a

4

Defendants' knowledge, no court has ever endorsed the use of Section 2 to enjoin a prospective merger or to find illegal the acquisition of a potential competitor. Tellingly, the only support DOJ has offered to date for its Section 2 potential competition claim is a citation to an antitrust treatise and to an eminently distinguishable out-of-circuit decision addressing non-merger conduct. (ECF 43, Plaintiff United States' Statement in Support of Administrative Relief for an Expedited Case Management Conference, at 3.) Neither supports a plausible Section 2 claim here.

*First*, DOJ points to Professor Herbert Hovenkamp's *Antitrust Law* treatise as support for its contention that the acquisition of an alleged potential competitor violates Section 2. (*Id.*) That treatise, however, does not cite a single case holding that an *acquisition* of a potential competitor can, standing alone, violate Section 2. Nor does Professor Hovenkamp attempt to square his view with the Supreme Court's guidance that the Clayton Act tests are *less* stringent than the tests applicable to the Sherman Act, *see Brown Shoe Co.*, 370 U.S. at 328-29, and his argument was recently criticized by a federal judge who previously ran the Antitrust Division of the Department of Justice, and a former FTC advisor.[6]

Even if for the sake of argument one were to accept Professor Hovenkamp's view that a potential-competitor acquisition might constitute exclusionary conduct under Section 2, here the DOJ's complaint fails to state a claim even under his proposed analytical framework. The portion of the treatise that DOJ cites hypothesizes that a Section 2 claim might be sustainable where an alleged monopolist acquires a firm that (i) has made the decision to enter the market; and (ii) but-for the acquisition, would have entered the market in the "immediate future."[7]

Here, DOJ's complaint is bereft of any allegation that Plaid has made an actual decision to

---

successful de novo entry" and the government failed to show the absence of other equally-qualified potential entrants).

[6] Douglas H. Ginsburg & Koren W. Wong-Ervin, *Challenging Consummated Mergers Under Section 2*, Competition Policy International, May 25, 2020, at 4, available at https://www.competitionpolicyinternational.com/challenging-consummated-mergers-under-section-2-2/ (hereinafter "Ginsburg").

[7] Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: an Analysis of Antitrust Principles and Their Application* ¶ 912a (5th ed. 2020) ("If the rival has not yet made its first sale, the tendency is to call the acquisition a 'potential competition' or nonhorizontal merger. . . . But even the firm that is preparing to make its first bid or its first sale must be counted as an 'actual' rival *once the entry*

5

invest in developing an end-to-end Pay-by-Bank ("PBB") product. Nor does it allege that Plaid has the economic wherewithal to enter with such a product; that Plaid has undertaken concrete steps towards doing so; or that the products Plaid is piloting are sufficient to develop an end-to-end payments network in the "immediate future." Instead, the complaint includes only vague allegations that Plaid has unidentified "plans" to enter the money-movement business by the end of 2021 (Compl. ¶¶ 10, 40); that Plaid "is planning to leverage [its existing] technology" (*id*. ¶ 8), which "provides an easy interface for fintech apps to collect consumers' financial data" (*id*. ¶ 37); and that Plaid is piloting certain of its products, which in turn, it hopes "to build on . . . by creating an 'end-to-end payments network'" (*id*. ¶ 40). These vague, generalized allegations do not meet the Section 2 potential-competitor acquisition "standard" advocated by Professor Hovenkamp. Nor could DOJ amend its complaint to overcome these deficiencies: because PBB does not currently exist in any significant capacity in the United States (*id*. ¶¶ 33-34), DOJ cannot possibly allege that Plaid would have entered the alleged relevant market with a PBB product in the "immediate future" but for the proposed acquisition.

*Second*, DOJ's reliance on *Microsoft* is similarly misplaced. (*Id.* ¶ 13 (citing *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001))). DOJ argues that *Microsoft* permits DOJ to skip past proving actual anticompetitive effects flowing from the acquisition, and prevail merely by asserting that the acquisition of Plaid "reasonably appear[s] capable of making a significant contribution to . . . maintaining monopoly power." *Microsoft*, 253 F.3d at 79 (alterations in original).

As an initial matter, this out-of-circuit decision is plainly distinguishable on the facts as it involved a host of other types of exclusionary conduct—not an acquisition of a supposedly nascent competitor as alleged here. *See id.* at 58-78 (holding that Microsoft engaged in exclusionary conduct without any countervailing procompetitive justification, including (1) imposing anticompetitive provisions in Windows licensing agreements; (2) technologically binding Internet Explorer to Windows; (3) entering into exclusive dealing contracts with internet access providers,

---

*decision has been made*. . . . The important point is that the acquisition eliminates an important route by which competition *could have increased in the immediate future*.") (emphasis added).

6

independent software vendors and Apple; (4) deceiving competitor developers; and (5) pressuring other companies to stop supporting nascent technologies). The *Microsoft* court concluded that the government had either successfully proven nearly all strands of the challenged conduct to be exclusionary, or the defendant had effectively conceded as much. *Id.*

Moreover, even the DOJ's oft-cited passage from *Microsoft* recognizes that a plaintiff must demonstrate both anticompetitive conduct and causation. *Id.* at 79 (discussing whether, to establish Section 2 liability, plaintiff must present proof that a defendant's continued monopoly power is "precisely attributable to its anticompetitive conduct"). Courts consider causation only *after* the challenged conduct has been found to be exclusionary. *See Qualcomm Inc.*, 969 F.3d at 990-92 (holding conduct can be condemned as exclusionary only if monopolist's act has an anticompetitive effect); *Epic Games, Inc.*, 2020 WL 5993222, at *9 (observing that causation is considered only after plaintiff satisfies the first and second elements of monopoly power and willful maintenance or acquisition of power in the relevant market). Thus, the DOJ's position on what might constitute exclusionary conduct here relies on an opinion where exclusionary conduct—*i.e.* conduct having anticompetitive effect without redeeming justifications—had already been conclusively established.

DOJ's interpretation of *Microsoft* has also been rejected by Judge Douglas Ginsburg, a former Assistant Attorney General in charge of the Antitrust Division, who sat on the *en banc* panel that issued the *Microsoft* decision. In a recent article, Judge Ginsburg rejected the assertion that Section 2 "does not require proof of anticompetitive effects," explaining that such a view is based upon a "misreading" of *Microsoft* and "conflates the *Microsoft* court's standard for proving competitive effects with its standard for establishing causation."[8] Judge Ginsburg further noted that for purposes of potential-competitor acquisitions, *Microsoft*, when read together with the D.C. Circuit's later decision in *Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008), stands for the proposition that "only when anticompetitive effects are shown . . . *may the government avoid having to show that the threat would have become a real competitor but for the alleged*

---

[8] Ginsburg at 2.

7

*exclusionary conduct*."[9]  Here, because the only exclusionary conduct challenged in the complaint is the proposed transaction, and DOJ has not plausibly alleged that Plaid was poised to become a real competitor in the absence of the proposed acquisition, DOJ has failed to allege a plausible claim under Section 2 of the Sherman Act.

Eliminating the Section 2 claim leaves the court with more limited yet fully dispositive issues under Section 7.  Case law interpreting Section 7 in the context of potential competition requires the court to consider whether the relevant market is highly concentrated and whether the potential entrant has "feasible means" for entering the market.[10]  In contrast, Section 2 imposes additional elements beyond those required for Section 7, including the possession of monopoly power, proof of causation, and consideration of any offsetting efficiencies and valid business justifications.[11]  Focusing solely on DOJ's Section 7 claim would still allow for plaintiff to seek to obtain the precise relief that it requests.

### C. *Dismissal of DOJ's Section 2 Claim will Streamline this Litigation*

Dismissing DOJ's insufficiently-pled Section 2 claim at this early stage will streamline the litigation and be significantly more efficient for the Court.  It is well established that merger challenges are tried on expedited litigation schedules.  *See* 15 U.S.C. § 25 (providing that in an injunction action under Section 7 of the Clayton Act, "the court shall proceed, as soon as may be, to the hearing and determination of the case").[12]  Here, however, DOJ has made clear that it views

---

[9] Ginsburg at 4 (emphasis added) (also condemning the risk of adopting Professor Hovenkamp's proposal that a potential-entrant acquisition can be exclusionary where the target firm (a) "has the economic capabilities for entry"; (b) is a "more-than-fanciful possible entrant"; and (c) "is [] different from many other firms in these respects" as outlined in Areeda & Hovenkamp ¶ 701d).

[10] *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 633 (1974).

[11] *Grinnell Corp.*, 384 U.S. at 570-71; *see also Oahu Gas Serv. Inc. v. Pac. Res. Inc.*, 838 F.2d 360, 369 (9th Cir. 1988).

[12] *See also United States v. US Airways Grp.*, 979 F. Supp. 2d 33, 35 (D.D.C. 2013) ("Indeed, because of the need for the prompt resolution of this matter, the Court has set an expedited discovery and trial schedule."); *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 44 (D.D.C. 2011) ("[T]he Court entered a scheduling order in this case that provided for an expedited schedule of fact and expert discovery and briefing on the government's anticipated motion to enjoin the transaction.").

8

the inclusion of a Section 2 claim as grounds for delaying resolution of this matter on the merits,[13] and that Section 2 entitles it to more expansive discovery than would be necessary under the Section 7 claim—all despite challenging precisely the same conduct (the merger), in the same purported market, and seeking the same relief for both its Section 2 and Section 7 claims (an injunction).  Dismissing DOJ's insufficiently-pled Section 2 claim will therefore streamline discovery and allow this case to proceed to an expeditious resolution on the merits, while allowing DOJ to continue to pursue the entirety of the relief it seeks under the more appropriate vehicle of a Clayton Act Section 7 claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss DOJ's Section 2 claim with prejudice.  *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007) ("Because allowing amendment would be futile, we hold that the district court properly dismissed [plaintiff's] claims with prejudice and without leave to amend.").

---

[13] *See* ECF 43 at 1 (claiming defendants' proposed schedule was faster than schedules "adopted in the vast majority of merger cases—cases that involved fewer legal claims in less complex industries . . . .").

Case 4:20-cv-07810-JSW   Document 57-1   Filed 12/11/20   Page 14 of 14

DATED: December 11, 2020

| | |
|---|---|
| By: */s/ Jack P. DiCanio*<br>    Jack P. DiCanio<br>    *Attorney for Defendant*<br>    VISA INC. | By: */s/ Jonathan M. Jacobson*<br>    JONATHAN M. JACOBSON<br>    *Attorney for Defendant*<br>    PLAID INC. |
| Jack P. DiCanio (SBN 138782)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>525 University Avenue, Suite 1400<br>Palo Alto, California 94301<br>Telephone: (650) 470-4500<br>Facsimile: (650) 470-4570<br>Email: Jack.DiCanio@skadden.com | Jonathan M. Jacobson, SBN 1350495<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, New York 10019<br>Telephone: (212) 497-7758<br>Facsimile: (212) 999-5899<br>Email: jjacobson@wsgr.com |
| Steven C. Sunshine (*pro hac vice*)<br>Tara Reinhart (*pro hac vice*)<br>Julia York (*pro hac vice*)<br>Joseph Ciani-Dausch (*pro hac vice*)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>1440 New York, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 371-7000<br>Facsimile (202) 393-5760<br>Email: steven.sunshine@skadden.com<br>Email: tara.reinhart@skadden.com<br>Email: julia.york@skadden.com<br>Email: joseph.ciani-dausch@skadden.com | Justina K. Sessions, SBN 270914<br>Benjamin S. Labow, SBN 229443<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>One Market Plaza, Spear Tower, Suite 3300<br>San Francisco, California 94105<br>Telephone: (415) 947-2000<br>Facsimile: (415) 947-2099<br>Email: jsessions@wsgr.com<br>Email: blabow@wsgr.com |
| Karen Lent (*pro hac vice*)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001<br>Telephone: (213) 735-3000<br>Facsimile: (213) 735-2000<br>Email: karen.lent@skadden.com | Scott A. Sher, SBN 190053<br>Michelle Yost Hale (*pro hac vice*)<br>Robin S. Crauthers (*pro hac vice*)<br>Katie R. Glynn, SBN 300524<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1700 K Street NW, Fifth Floor<br>Washington, DC 20006<br>Telephone: (202) 973-8800<br>Facsimile: (202) 973-8899<br>Email: ssher@wsgr.com<br>Email: mhale@wsgr.com<br>Email: rcrauthers@wsgr.com<br>Email: kglynn@wsgr.com |

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS                    CASE NO. 4:20-cv-7810-JSW